**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **In the Matter of an Application to Enforce Administrative Subpoenas of the**<br><br>**COMMODITY FUTURES TRADING COMMISSION,**<br><br>   **Applicant,**<br><br>   v.<br><br>**FIRST STATE DEPOSITORY COMPANY, LLC, and ARGENT ASSET GROUP LLC,**<br><br>   **Respondents.** |

**Misc. Action No.**

**DECLARATION OF COMMISSION INVESTIGATOR MICHAEL LOCONTE**
**IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE AND**
**AN ORDER REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS**

I, Michael Loconte, pursuant to 28 U.S.C. § 1746 (2018), hereby make the following

declaration based upon my personal knowledge:

1.   I have been employed as a Futures Trading Investigator since 2008 in the

headquarters of the Division of Enforcement ("Division") of the Commodity Futures Trading

Commission ("Commission"), located at Three Lafayette Centre, 1155 21st Street NW,

Washington, DC 20581. I have a Bachelor's degree in marketing from Pace University.

2.   As a Futures Trading Investigator with the Commission, my responsibilities

include the investigation of registered and unregistered commodity firms and individuals located

throughout the United States to ensure compliance with and enforcement of the Commodity

Exchange Act, 7 U.S.C. §§ 1-26. (the "Act"), and the Commission's Regulations

("Regulations"), 17 C.F.R. §§ 1.1-190.10, promulgated thereunder. In connection with these

responsibilities, I routinely analyze customer account documents, review trading documentation,

1

analyze bank records, trace the flow of funds, review registration information, and conduct investigative interviews.

3. Respondent First State Depository Company, LLC ("First State") is a Delaware business entity with its principal place of business in Wilmington, DE.

4. Respondent Argent Asset Group LLC ("Argent") is a Delaware business entity with its principal place of business at the same address in as First State in Wilmington, DE.[1] According to documents obtained by the Commission, Argent has touted itself as a "leading numismatic and precious metals trading firm."

5. Both First State and Argent are owned (directly or indirectly) and controlled by Robert Leroy Higgins ("Mr. Higgins"), a natural person who resides in West Chester, PA. In documents obtained by the Commission, Mr. Higgins describes himself as Managing Member, Chief Numismatist, and Rare Coin Fund Manager for Argent, and as Chief Executive Officer of First State. Prior to creating Argent, Mr. Higgins owned a company called Certified Assets Management, Inc. ("CAMI"), which had a similar business model to Argent.[2]

6. The Commission is an independent federal regulatory agency responsible for administering and enforcing the Act and Regulations.

7. The Division has several investigative tools for obtaining potential evidence to determine whether or not a violation occurred within the jurisdiction of the Commission, including requests for information from registrants pursuant to Section 4g of the Act, 7 U.S.C. § 6g (2018), voluntary requests for information and interviews of potential witnesses, inspections of required records from entities or persons required by law to register with the Commission,

---

[1] The Division is aware of but has not provided the exact street address of both Respondents for privacy purposes. Should the Court require the exact street address, the Division can furnish the Court with that information.

[2] This declaration uses the phrase "the Higgins Companies," to refer to Argent, First, State, and CAMI.

procurement of information from other governmental or quasi-governmental entities, analysis of market data, whistleblowers, and the nationwide issuance of subpoenas for documents and compelled testimony. See CEA §§ 4g, 9(5)-(6), 7 U.S.C. §§ 6g, 9(5)-(6) (2018).

8.     In 2019 and 2020, the Division obtained information indicating that a third party not before the Court in this matter may have engaged in fraudulent or manipulative conduct involving precious metals purchased, sold, or leased to Argent, or held on deposit at First State. Accordingly, on behalf of the Commission, the Division initiated an investigation from its Washington, DC headquarters to determine whether the third party or others had violated or were violating the Act and Regulations.

9.     Division staff has taken numerous steps in furtherance of the investigation from the Commission's headquarters. Division staff based in Washington, DC:  (1) obtained authority to investigate pursuant to a formal order of investigation issued by the Commission; (2) sent and received correspondence with individuals and entities located across the country; (3) conducted telephone interviews with potential witnesses located across the country; (4) took investigative testimony from witnesses in multiple states; (5) issued requests for documents and subpoenas to individuals and entities across the country; (6) obtained documents in response to those requests and subpoenas; and (7) compiled and maintained investigative files.

10.     In particular, Division staff has issued subpoenas to individuals and entities in at least 25 states, and has received or expects to receive all document productions to its Washington, DC headquarters. Division staff has conducted telephone interviews, taken investigative testimony, and engaged in related correspondence with individuals and entities located in at least five different states. The Division anticipates that its investigation will continue to occur on this nationwide basis.

11.     During the course of the investigation, the Division obtained information indicating that Argent, First State, and/or Mr. Higgins may themselves have engaged in fraudulent or manipulative conduct involving precious metals that they held on deposit or purchased, sold, or leased for or from customers across the country.

12.     The information the Division gathered made it clear that First State possessed vital information directly concerning the investigation. Accordingly, the Division issued a subpoena to First State on November 19, 2019, directing it to produce documents to the Division on or before December 4, 2019. *See* Ex. A attached hereto. The front of the Subpoena contained a warning in bold-faced capital letters that "failure to comply with this subpoena may result in the commencement of a legal action in the United States District Court to compel compliance with the requirements hereof." *Id.*[3] On November 20, 2019, the subpoena was delivered via overnight UPS to First State's registered agent and to First State's office, where the package was received by an individual with the last name "Higgins." *See* Exs. B and C attached hereto.

13.     First State did not respond to the subpoena or contact Division staff by the December 4, 2019, return date. Division staff spent the next several weeks corresponding with First State employees, who said that Mr. Higgins was the only First State representative capable of discussing the subpoena with Division staff, that Mr. Higgins was unavailable, that he was out of the office, and that he was traveling and would get back to Division staff soon. *See, e.g.*, Ex. D attached hereto.

14.     On January 13, 2020, more than one month after the return date and nearly two months after First State received the subpoena, the Division sent a letter to First State describing

---

[3]     The other subpoenas at issue in this action contained the same warning. *See* Exs. E, K, L attached hereto.

its attempts to speak with someone about the subpoena and stating that the Commission intended to commence a subpoena enforcement action if First State did not immediately comply. *Id.*

15.     On January 14, 2020, the Division issued a subpoena to Argent. *See* Ex. E attached hereto. On January 15, 2020, copies of that subpoena were delivered via overnight UPS to Argent's registered agent, and also to Argent's office, where the package was again received by an individual with the last name Higgins. *See* Ex. F attached hereto. Division staff also sent a copy of the Argent subpoena directly to Mr. Higgins' email address on the morning of January 15, 2020. *See* Ex. G attached hereto. Mr. Higgins responded on January 16, 2020, indicating that he would review the subpoena when he was back in Delaware the next day and then respond. *Id.*

16.     Mr. Higgins did not respond to the subpoena or contact the Division as he had indicated, so Division staff called Mr. Higgins on Friday, January 24, 2020. During that call, Mr. Higgins stated that he was in the process of retaining counsel for both First State and Argent and said counsel would be in touch early the following week. Division staff told Mr. Higgins that they were not permitted to speak directly to Mr. Higgins if he had retained counsel, and ended the call.

17.     Division staff did not hear from counsel and emailed Mr. Higgins on Wednesday, January 29, 2020, to ask if he had retained counsel, and if so, when counsel would reach out to the Division. *Id.* Mr. Higgins indicated that counsel would contact Division staff the next day, *see* Ex. H attached hereto, and on January 30, 2020, Division staff was in fact contacted by an attorney retained to represent Argent, First State, and Mr. Higgins.

18.     Over the course of the next several months, Division staff engaged in near-weekly calls and emails with counsel to try to understand when First State and Argent intended to

produce documents.  On March 12, 2020, counsel produced fourteen documents to the Division, consisting of agreements between the Higgins Companies and third parties.

19.     On April 14, 2020, counsel authorized Division staff to contact Mr. Higgins directly via email.  *See* Ex. I attached hereto.  Division staff did so, and pursuant to counsel's authorization and suggestion, informed Mr. Higgins that his counsel was unable to reach him and that the Commission was considering filing a subpoena enforcement action if he did not comply with the subpoenas issued on November 19, 2019 and January 14, 2020 (the "First Set of Subpoenas").  *See* Ex. J attached hereto.

20.     On June 18, 2020, First State and Argent collectively produced approximately 47,000 documents to the Commission.[4]  Division staff determined that Respondents had not adequately responded to certain requests in the Subpoenas, and that Respondents likely possessed relevant documents that may have been outside the scope of the First Set of Subpoenas.  Because Respondents' production was not organized by subpoena request, and Respondents have not made representations to the Division about which requests have or have not been satisfied, it is difficult for the Division to know with certainty if specific requests have been fully satisfied.  Nonetheless, Division staff has identified several specific deficiencies. These deficiencies include that First State and Argent have not produced:  accounting statements, ledgers, or other documents regarding metals leasing activity; documents identifying persons holding an interest in leased metal; documents identifying the counterparties to whom leased metal was leased or sold; and certain insurance policies; that Argent has not produced year-end financial statements; documents indicating how the lease programs were recorded on Argent's

---

[4]     In the interest of expediency, Division staff agreed with counsel that he need not conduct a document-by-document review of documents for responsiveness.  As a result, the document production contained at least several thousand documents that were spam, newsletters, or emails otherwise irrelevant to the investigation.

books; documents identifying the flow of funds between First State and Argent in connection with leasing programs; and documents regarding lawsuits related to leasing programs; and that First State has not produced all documents regarding the payment or receipt of money from parties for leasing metals. *See* Ex. A at Schedule A ¶¶ 1, 3, 8.c., 8.e., 8.g., 9; Ex. E at Schedule A ¶¶ 1.c., 1.e., 1.g., 1.h., 1.i., 1.j., 2, 3.c., 3.d., 4.

21.     Accordingly, the Commission issued additional subpoenas to First State and Argent on July 29, 2020, setting a return date of August 14, 2020 (the "July Subpoenas"). *See* Exs. K and L attached hereto.

22.     To-date, the Division has not been able to obtain records in response to the July Subpoenas. On February 23, 2021, Division staff told counsel that it would recommend the Commission commence a subpoena enforcement action if First State and Argent did not respond to the July Subpoenas or address deficiencies in their response to the First Set of Subpoenas by March 5, 2021. *See* Ex. M attached hereto. Division staff has not heard from counsel since, and First State and Argent have not made any subsequent document productions.


I declare under penalty of perjury that the foregoing is true and correct. Executed on May 5, 2021, in Washington, DC by:

Michael Loconte

# EXHIBIT A

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

BRIAN A. HUNT
TRIAL ATTORNEY
(202) 418-5095
bhunt@cftc.gov

November 19, 2019

**By UPS Next Day Air**

First State Depository Company, LLC
100 Todds Lane
Wilmington, DE 19802-3212

First State Depository Company, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

To Whom It May Concern:

    Pursuant to Sections 6(c) and 8(a) of the Commodity Exchange Act, as amended, 7 U.S.C. §§ 15 and 12(a), and Section 11.4 of the Commodity Futures Trading Commission's Regulations, 17 C.F.R. §11.4, enclosed is a true and complete copy of an administrative subpoena commanding that you produce by **5:00 p.m. on December 4, 2019** certain documents and other materials to the Commission, as set forth in Schedule A to the subpoena.

    Complete instructions for complying with the subpoena may be found in the subpoena and its attachments.  The Division requires that you produce all electronic documents in native file format in accordance with the attached *CFTC Data Delivery Standards*.  The Division asks that the documents be sent either electronically or by overnight delivery; do not produce any documents via the U.S. Postal Service.  Please email **eLaw-CPI@cftc.gov** if you wish to send the documents via the Commission's secure file transfer protocol ("FTP").  You will receive a response with the Commission's FTP credentials.  When sending documents via FTP, you MUST include the matter number A9137, the Commission point of contact, and a cover letter. Overnight deliveries should be sent to:

Brian A. Hunt
1155 21st Street NW
Mailstop CPI
Washington, DC, 20581

Please include with your response a cover letter stating whether your response is complete.  If your response is not complete, the cover letter should explain any deficiencies.  Also attached please find a copy of the Commission's *Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission*, which sets forth information explaining certain rights and obligations of witnesses and uses of information submitted to the Commission.

If you have any questions regarding this subpoena, please do not hesitate to contact me at (202) 418-5095, or Michael Solinsky at (202) 418-5384.

Sincerely,

Brian A. Hunt
Trial Attorney

Enclosures:
1. Subpoena
2. Instructions, Definitions, and Schedule A to Subpoena
3. CFTC Data Delivery Standards
4. Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

# SUBPOENA
# *DUCES TECUM*

**TO:**   First State Depository Company, LLC
100 Todds Lane
Wilmington, DE 19802-3212

First State Depository Company, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

**YOU ARE HEREBY COMMANDED** to produce all books, papers, documents, and other tangible things specified in the attached **Schedule A** in connection with an investigation by the Commodity Futures Trading Commission ("Commission") in the matter of:

**West Hills Capital LLC and Joseph Unger**

Responsive records are to be produced to Brian Hunt, Michael Solinsky or others at the Commission's headquarters, Three Lafayette Centre, 1155 21st Street, N.W., Suite 7000, Washington, DC 20581, by close of business on **December 4, 2019**, in accordance with the instructions attached to this subpoena.

**FAILURE TO COMPLY WITH THIS SUBPOENA MAY RESULT IN
THE COMMENCEMENT OF A LEGAL ACTION IN THE UNITED
STATES DISTRICT COURT TO COMPEL COMPLIANCE WITH THE
REQUIREMENTS HEREOF.**

Issued this 19th day of November 2019, at Washington, DC by:

*/s/Brian A. Hunt*
Brian A. Hunt
Designated Officer
Commodity Futures Trading Commission

CFTC Form 10 (6-83)

**RETURN OF SERVICE**

In the case of a natural person:

[ ]     handing it to the person named herein.

[ ]     leaving it at the person's office with the person in charge, namely:

[ ]     leaving it at the person's office in a conspicuous place, to wit:

[ ]     leaving it at the person's usual place of abode, namely:

[ ]     mailing by UPS NEXT DAY AIR to the following address:

[ ]     another method by which actual notice is given, to wit:

**In the case of service upon other than a natural person:**

[ ]     handing it to a registered agent for service or other officer, director or agent in charge of such office, namely
(name & title):

[X]     mailing by UPS NEXT DAY AIR to such agent or representative, namely (name, title & address):

     Registered Agents Legal Services, LLC
     1013 Centre Road Suite 403S
     Wilmington, DE 19805-1270

[X]     another method by which actual notice is given, to wit:

    Mailing by UPS NEXT DAY AIR to:

     First State Depository Company, LLC
     100 Todds Lane
     Wilmington, DE 19802-3212

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I caused this subpoena to be served in accordance with the method noted above.*

Dated:   November 19, 2019

        _/s/Brian A. Hunt_
        Brian A. Hunt

# INSTRUCTIONS FOR
# SUBPOENA *DUCES TECUM* ISSUED TO
# FIRST STATE DEPOSITORY COMPANY, LLC

1.  Each page or object of the production must be numbered sequentially beginning with 0001, and the production must be accompanied by a sworn affidavit authenticating the materials and certifying that the production is complete.  That affidavit must include the following information:

    a.  Identification, by name and title, of all persons involved in the search for the specified materials;

    b.  A description of the search for the specified materials;

    c.  A statement that the search was complete and that all responsive materials are being produced;

    d.  Identification of each document, or where appropriate, each group or category of documents, responsive to each paragraph of the attached Schedule by reference to the numbers you have assigned to them; and

    e.  A statement as to whether the materials produced were made and kept in the course of your regularly conducted business, and whether it was your regular practice to make and keep such materials.

2.  If you do not possess, control, or have custody of any documents pursuant to any numbered paragraph in the attached Schedule, then you must so affirmatively state in your affidavit;

3.  If you decline to produce a document because you believe that the document has been destroyed, provide the following information for this document in your affidavit:

    a.  the type, title, date, and author or preparer of the document;

    b.  a description of the document's subject matter and physical size;

    c.  the identity and address of each recipient of the original or a copy of the document, together with the date or approximate date on which each recipient received the document;

    d.  the identity and address of all other persons to whom the contents of the document have been disclosed, the date such disclosure took place, and the means of such disclosure;

    e.  the date the document was destroyed; and

    f.  the person who ordered or authorized such destruction.

4.      If you decline to produce an existing document on the basis of a claim of privilege or for any other reason, provide the following information for this document in your affidavit:

       a.   the type, title, date, and author or preparer of the document;

       b.   a description of the document's subject matter and physical size;

       c.   the identity and address of each recipient of the original or a copy of the document, together with the date or approximate date on which each recipient received the document;

       d.   the identity and address of all other persons to whom the contents of the document have been disclosed, the date such disclosure took place, and the means of such disclosure; and

       e.   the nature of the privilege or rule of law relied upon, including who is asserting the privilege or rule and the basis for asserting that privilege or rule, or other reason for non-production.

5.      A complete copy of each document shall be submitted even though only a portion of the document is responsive.  The document shall not be edited, redacted, cut, or expunged and shall include all covering letters and memoranda, transmittal slips, appendices, tables or other attachments and all other documents referred to in the document or attachments.  If you make any redactions based upon a claim of privilege, such redactions must be clearly marked.

6.      If a document is called for by more than one numbered paragraph in the attached Schedule, it is not necessary to submit more than one copy of the document.  Reference may be made to production made pursuant to a prior numbered paragraph.

7.      Legible, true, correct, and complete photocopies may be submitted in lieu of original documents, provided that the originals are retained in their current state and are available for inspection if requested by Commission staff and provided further that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any Commission proceeding or court of law.

8.      Unless otherwise specifically provided herein, you may provide responsive documents in electronic form.  The Commission requests that all such electronic documents be produced in accordance with the instructions in the attached CFTC Data Delivery Standards, dated June 14, 2018.

9.      This subpoena for production of documents is continuing in nature.  If additional responsive documents are located subsequent to production, you are to supplement your production accordingly.

10.     No agreement purporting to modify, limit or otherwise vary this subpoena shall be valid and binding on the Division of Enforcement or Commission unless confirmed or

acknowledged in writing (or made of record in court) by a duly authorized representative thereof.

## NOTICE CONCERNING DOCUMENT DESTRUCTION

Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or object, in an official proceeding; or (D) be absent from an official proceeding to which such person has been summoned by legal process; or (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than ten years, or both.  18 U.S.C. § 1512(b).

# DEFINITIONS FOR
# SUBPOENA *DUCES TECUM* ISSUED TO
# FIRST STATE DEPOSITORY COMPANY, LLC

The following definitions and instructions are expressly incorporated into each specific demand for production in Schedule A as if fully stated therein:

1. **"You"** or **"your"** or "**First State Depository**" refers to First State Depository Company, LLC and any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

2. "**Joe Unger**" or "**Unger**" refers to the natural person Joseph Unger, in both his personal capacity and in his capacity as an owner, principal, member, operator, manager, officer, director, employee, custodian, or shareholder of West Hills Capital, as well as any agent, employee, or other person acting on Unger's behalf.

3. **"West Hills Capital"** refers to West Hills Capital LLC, and any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

4. **"And"** as well as **"or"** shall be construed both in the conjunctive and disjunctive as needed to bring within the scope of any portion of the subpoena all documents that otherwise might be construed as outside its scope.

5. "**Commodity Source**" means any transaction administrator, wholesale precious metals dealers, any firms holding themselves out as a precious metals "clearing" firm or "clearinghouse," or any other physical commodity sources used to acquire or sell or dispose of precious metals to fulfill West Hills Capital's obligations to its Customers.

6. "**Communication**" shall be construed broadly and means all manners of transmitting or receiving information, opinions, or thoughts, orally, in writing, in person, telephonically, electronically, or otherwise, and includes without limitation email, text messages, instant messages, messages sent through smartphone applications, content posted on or through websites or social media platforms, voice-mail, recordings of telephone calls, agreements, account statements, and account snapshots, as well as any and all written or electronic materials transmitted by a person or corporate entity to another person or corporate entity.

7. **"Concern"** and **"concerning"** mean connected with, constituting, describing, evidencing, involving, pertaining to, referring to, or regarding.

8. **"Document"** is synonymous in meaning and equal in scope to the usage of that term in Federal Rule of Civil Procedure 34(a).  Accordingly, "**document**," for purposes of this subpoena, means any memorialization, whether typed, written, recorded, printed, or otherwise reproduced by any process or by hand, and includes, but is not limited to:

6

agreements; contracts; correspondence; facsimile or E-mail transmissions; telephone logs and records; memoranda; diaries; graphs; models; mathematical and statistical data; reports; notebooks; manuals; charts; plans; journals; ledgers; financial statements; information stored on or generated by computer disks, hard drives, tapes or other electronic data storage systems; bank records; brochures; electronically recorded information such as audiotape or videotape recordings; microfilm or microfiche; summaries, analyses, commentaries, minutes, transcripts, or other records of interviews, meetings, conferences, conversations or discussions; as well as all drafts of the foregoing and any copies bearing marks or notations not found on the original.

The definition of "documents" used in this subpoena includes information stored in or accessible through, computer or other information retrieval systems.  In determining where responsive documents in this form might be located, you are required to search all equipment or media that may contain "documents" as defined herein, whether maintained by you or by a third party on your behalf, including but not limited to:

a.  Laptops, notebooks, hand-helds, Personal Digital Assistants (PDAs), portable electronic mail or document devices and other portable computers, personal computers, workstations, minicomputers, or mainframes, whether used by single or multiple users, or as servers or storage facilities, and any home computers or cell phones;

b.  Cloud computing, internet data storage, social media accounts, and mobile telephone programs or applications; and

c.  Backup and archival disks, tapes, and documents, and other forms of offline storage, whether maintained by your or by a third party on your behalf.

9.  **"Fee"** means any storage fee, sales commission, finance charge, service charge, shipping charge, sales or use tax, transaction charge, or any other type of commission or charge assessed, requested, or paid.

10.  **"Including"** or **"includes"** are used in the broadest sense of the term and specification of a particular matter included in a request is not meant to exclude any other documents that might be responsive to a specific request.

11.  **"Person"** or **"entity"** shall include any natural person or any business, legal, or governmental entity or association, and any such person's or entity's directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

12.  **"Possession"** means actual or constructive possession and includes any document within your custody or control, any document that you have a legal right to obtain from another, and any document within the possession of your agents, employees, accountants, attorneys or representatives.

13.  **"Reflect"** and **"reflecting"** mean manifesting, revealing, showing or evidencing.

14.    **"Relating to"** means connected with or to, concerning, constituting, describing, evidencing, memorializing, involving, pertaining to, referring to, reflecting, or regarding.

15.    **"Silver Lease Program"** means the investment opportunity that West Hills Capital advertised to West Hills Capital Customers as the "Silver Deposit Account" program or "Silver Lease Program," as well as any other program by which West Hills Capital Customers could purportedly earn monthly income by leasing precious metals coins, precious metals bullion, or precious metals tokens that were purchased, nominally acquired, or invested in through West Hills Capital.

16.    **"Subpoena Period"** means December 31, 2016 through the present.

17.    "**Unger Accounts**" means all accounts at First State Depository in the name of, for the benefit of, or controlled by Joe Unger or West Hills Capital, or which Unger or West Hills Capital opened on behalf of West Hills Capital Customers, or in which Unger or West Hills Capital held an interest, or for which Unger or West Hills Capital served as attorney-in-fact, or for which Unger or West Hills Capital was authorized to receive information.

18.    **"West Hills Capital Customer"** refers to any person or entity from whom West Hills Capital or Unger accepted funds for investment, account management, retirement planning, trading, or other services in connection with the purchase or sale of commodities, commodity futures, or commodity options, whether domestic or foreign.

19.    The use of the singular shall be construed to include the plural.

# SCHEDULE A

# DOCUMENTS TO BE PRODUCED BY
# FIRST STATE DEPOSITORY COMPANY, LLC

*The foregoing definitions and instructions are expressly incorporated into each specific request for production as if fully stated therein.  For the Subpoena Period, unless otherwise described, you are required to produce the following documents in your possession, custody, or control:*

1.    All documents relating to the storage of precious metals on behalf of Unger or West Hills Capital or West Hills Capital Customers, including, but not limited to, all account opening documents, contracts, or other agreements, all documents concerning the amount of precious metals stored for Unger or West Hills Capital or West Hills Capital Customers, all insurance policies or agreements covering the precious metals stored for Unger or West Hills Capital or West Hills Capital Customers, and all documents concerning storage fees charged to Unger or West Hills Capital or West Hills Capital Customers.

2.    All financing agreements, sales agreements, invoices, promissory notes, loan agreements, delivery agreements, or other contracts associated with the Unger Accounts.

3.    Documents sufficient to identify the names, addresses, telephone numbers, and email addresses of all persons or entities who hold or held an interest in coins or precious metals through the Unger Accounts.

4.    All periodic (e.g. monthly, quarterly, annual) and other account statements for the Unger Accounts, including statements provided to persons or entities who hold or held an interest in coins or metals through the Unger Accounts.

5.    All documents relating to Fees charged to or paid by Unger, West Hills Capital, or West Hills Capital Customers, including, but not limited to, all statements reflecting those Fees and documents explaining First State Depository's or West Hills Capital's method of calculating and assessing Fees.

6.    All documents relating to West Hills Capital's proprietary precious metals inventory, including, but not limited to, any listing of precious metals owned, titled, controlled, or in the name of West Hills Capital (as opposed to West Hills Capital Customers).

7.    All documents relating to the delivery of precious metals to West Hills Capital Customers, including, but not limited to, warrants, documents of title, warehouse receipts, weight certificates, or other documents showing the weight, quantity, and quality of the precious metals delivered, as well as the date, manner, method, and form of delivery.

8.    All documents and communications concerning the Silver Lease Program, including but not limited to:

9

a.  All communications with West Hills Capital, Unger, or any Commodity Source concerning or relating to the Silver Lease Program;

b.  Agreements with West Hills Capital Customers regarding the Silver Lease Program;

c.  All documents and communications regarding the leasing of American Silver Eagle coins or other coins or bullion;

d.  All documents relating to transactions between West Hills Capital and any Commodity Source for the Silver Lease Program;

e.  All documents reflecting the payment of money to, or receipt of money from, any Commodity Source concerning or relating to the Silver Lease Program;

f.  All documents regarding payments to West Hills Capital, Unger, or West Hills Capital Customers for the leasing, hypothecation, pledging, or loaning out of American Silver Eagle coins or other coins or bullion, including but not limited to contracts, agreements, wire transfers, checks, accounting statements, ledgers, spreadsheets, reports, or any other documents calculating or reporting how lease income was generated through the Silver Lease Program;

g.  Documents sufficient to identify:

    i.  The counterparties to whom West Hills Capital Customers' American Silver Eagle coins were leased,

    ii.  The number of coins or amount of bullion leased for each transaction,

    iii.  The start and end date of each lease,

    iv.  Date of each lease payment received, and

    v.  Total payments received from each counterparty.

9.  A spreadsheet or documents sufficient to identify the number and weight of American Silver Eagle coins or other coins or bullion stored at First State for each of the following categories, and each account within each category:

a.  West Hills Capital,

b.  Joseph Unger,

c.  West Hills Capital Customers,

d.  Persons to whom West Hills Capital Customers' American Silver Eagle coins or other coins or bullion were leased, hypothecated, pledged, or loaned.

10.     All documents in your possession concerning complaints from West Hills Capital Customers, including, but not limited to, settlement agreements and all pleadings from any lawsuit filed by West Hills Capital Customers.



# CFTC Data Delivery Standards

## Effective:  June 14, 2018

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).  Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).

**\*\*Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.\*\***

## Contents

General Instructions ........................................................................................................................ 2

Electronic Discovery Protocols ...................................................................................................... 3

Delivery Formats ............................................................................................................................ 3

    I.    Native File Production ........................................................................................................ 3

        1.    Emails .......................................................................................................................... 3

        2.    Account Statements ..................................................................................................... 3

        3.    Instant Messages (IMs) ............................................................................................... 3

        4.    Audio Files .................................................................................................................. 4

        5.    Video Files .................................................................................................................. 4

        6.    Transcripts .................................................................................................................. 5

    II.    Imaged Collections ............................................................................................................. 5

        1.    Images ......................................................................................................................... 5

        2.    Concordance Image® Cross-Reference File .............................................................. 6

        3.    Data File ..................................................................................................................... 6

        4.    Text ............................................................................................................................. 9

        5.    Linked Native Files .................................................................................................... 9

    III.    Productions of Adobe PDF Files ........................................................................................ 9

    IV.    Productions of Website Content ....................................................................................... 10

    V.    Productions of Forensic Images of Computer Media ...................................................... 10

    VI.    Productions of Forensically Acquired Mobile Device Data ............................................ 10

    VII.    FTP (File Transfer Protocol) Submission ....................................................................... 10



# CFTC Data Delivery Standards
### Effective: June 14, 2018

## General Instructions

Please send documents via overnight mail **(**1155 21st Street NW, Mailstop CPI, Washington, DC, 20581) or use the Commission's secure file transfer protocol ("FTP"); **do <u>not</u> produce any documents via the U.S. Postal Service.** If you are interested in sending documents using FTP, email **<u>eLaw-CPI@cftc.gov</u>** and they will provide you with the Commission's FTP credentials upon request. When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.

<span style="color:red">(Note: An Adobe PDF file is <u>**not**</u> considered a native file unless the document was initially created as a PDF.)</span>

In the event produced files require the use of proprietary software not commonly found in the workplace, the CFTC will explore other format options with the producing party.

In regards to imaged collections, the use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.

General requirements for <u>ALL</u> document productions are:

1. **<u>Production of data via email is unacceptable.</u>**
2. Reference the specific portion of the request to which you are responding, along with a summary of the number of files in the production, so that we can confirm everything is loaded into our review system.
3. All native file submissions must be organized **by custodian** unless otherwise instructed.
4. All load-ready collections should include only one data load file and one image pointer file.
5. All load-ready text must be produced as separate text files, not as fields within the .DAT file.
6. All load-ready collections should account for custodians in the custodian field.
7. Audio files should be separated from data files if both are included in the production.
8. The preferred method of submission is via File Transfer Protocol (FTP). (See details in Section IV on page 10.)
9. Large productions (any production above 10 GB) must be submitted to the CFTC on media such as a CD, DVD, thumb drive, or hard drive. The media must be clearly marked with the following:
   a. Matter name
   b. Producing party
   c. Production date
   d. Disk number (1 of X), if applicable
10. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted. Any data received with file names or folders with special characters, including the comma, will be rejected. The combined length of the file path with folder and file name should not exceed 255 characters.



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

11. Include information within the cover letter regarding the time zone used, if emails or other electronic files were standardized during conversion.

12. If you want the submitted material returned at the conclusion of the investigation you must indicate that preference in writing when the material is produced, **and** the media on which it is provided ***must*** be encrypted.

13. All production data containing sensitive or personally identifiable information must be encrypted using FIPS 140 compliant software.

14. <u>Provide passwords for all password-protected files or hardware in a separate transmittal.</u>

15. All productions should be checked and produced free of computer viruses and malware. Productions containing viruses or malware may not be accepted and will require a new production.

16. If the production is created using Relativity, Duplicate Spare = No must not be applied.

## Electronic Discovery Protocols

If a producing party wants to employ winnowing techniques to reduce the volume of production material, then consultation with the CFTC attorney is required to define and agree upon the requirements and applied technology.  Thereafter, all productions made to the CFTC should reference the established protocol.  Such methodologies may include, but are not limited to, the following criteria:

- Data Sources
- Custodians
- Date Range(s)
- Search Terms
- Deduplication
- Email Threading Usage
- Early Case Assessment (ECA) Usage
- Technology Assisted Review (TAR)
- Other Criteria, including alternative forms of analytics

## Delivery Formats

### I.   Native File Production

Requirements for the production of native document files are listed below.

1. **Emails**:  Emails and attachments must be produced as PST, NSF, DBX, MBOX, or MSG files. The file name must include the name of the email custodian.  When a production consists of multiple custodians, a separate PST (or similar file) should be produced for each custodian.

2. **Account Statements**:  Account statements must be produced in the same format in which they were originally created and distributed.

3. **Instant Messages (IMs)**:  IMs should be produced in .PST format or a delimited text file which must include, at a minimum, the following fields:
   1) DATE
   2) TIME



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

3) FROM
4) TO
5) CONVERSATION_TEXT
6) CONVERSATION_INDEX

Multiple conversations must be produced in a single file and a conversation index or similar unique string must be used to identify all threads of the same conversation. Field names must be included in the first row of the text file.

4. **Audio Files**:  Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™.  Types of audio files that will be accepted include:
   o Nice Systems audio files (.aud).  AUD files offer efficient compression and would be preferred over both NMF and WAV files.
   o Nice Systems audio files (.nmf).
   o WAV files
   o MP3, MP4
   o WMA
   o AIF

Produced audio files must be in a separate folder compared to other data in the production.

Additionally, the call information (metadata) related to each audio recording **must be produced if it exists**. The metadata must include, at a minimum, the following fields:
   1) CALLER_NAME or CALLER_ID:     Caller's name or identification number
   2) CALLING_NUMBER:     Caller's phone number
   3) FILENAME:     Filename of audio file
   4) DATE:     Date of call
   5) TIME:     Time of call
   6) CALLED_PARTY:     Name of the party called
   7) CALLED_NUMBER:     Called party's phone number

The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly. The metadata file must be produced in delimited text format. Field names must be included in the first row of the text file.  A sample .DAT file containing only a few fields for illustration purposes is depicted below:

```
þTypeþþþAudio_Trimmedþþ þCALLER_IDþ þ þCUSTODIANþ þ þDATEþ þ þTIMEþ þ þCALLED_NUMBERþ þ þ
þ07/09/2007  09:33:03þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ07/09/2007þ þ09:32:42þ þ þ þ
þ07/17/2007  09:17:36þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ07/17/2007þ þ09:17:24þ þ þ þ
þ10/12/2007  08:13:12þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ10/12/2007þ þ08:12:47þ þ þ þ
þ10/12/2007  08:18:51þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ10/12/2007þ þ08:18:19þ þ þ þ
þ12/05/2007  07:12:14þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ12/05/2007þ þ07:11:58þ þ þ þ
þ12/17/2007  08:40:17þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ12/17/2007þ þ08:40:09þ þ þ þ
þ12/31/2007  09:39:12þþ þSpeakersþ þ þ þ þ þDoe, Janeþ þ12/31/2007þ þ09:39:00þ þ þ þ
```

5. **Video Files**:  Video files must be produced in a format that is playable using Microsoft Windows Media Player™ along with any available metadata.  If it is known that the



# CFTC Data Delivery Standards
### Effective:  June 14, 2018

video files do not contain associated audio, indicate this in the accompanying transmittal letter.  Types of video files accepted include:
- MPG
- AVI
- WMV
- MOV
- FLV

6. **Transcripts**:  Legal transcripts must be produced electronically in manuscript form with line numbers and page numbers. The preferred format is plain text (ASCII), although LiveNote and Summation formats are acceptable.

## II.   Imaged Collections

While the CFTC accepts imaged productions in addition to native formats, imaged productions without native formats are not permitted unless the original document only exists in hard copy form.   When images are produced, they must comply with the requirements below.

**\*\*\*The use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.\*\*\***

Note:  Adobe PDF files are **not** acceptable as imaged productions.  PDF files are acceptable only when the document content was initially created as a PDF (e.g., fillable PDF forms) and not converted from another format.

### 1.   Images

a.  Black and white images must be 300 DPI Group IV single-page TIFF files.
b.  Color images must be produced in JPEG format.
c.  File names cannot contain embedded spaces or special characters (including the comma).
d.  Folder names cannot contain embedded spaces or special characters (including the comma).
e.  All image files must have a unique file name.
f.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
g.  The number of TIFF files per folder should not exceed 500 files.
h.  TIFF images of Excel spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, should be used instead, and the native Excel file should be produced.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

2. **Concordance Image® Cross-Reference File**

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:

*ImageKey,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageKey*: | This is the unique designation that Concordance and Concordance Image and Relativity use to identify and retrieve an image. This value may be the same as the Bates number endorsed on each image. |
| *VolumeLabel:* | Leave this field empty. |
| *ImageFilePath:* | This is the full path to the image file on the produced storage media. |
| *DocumentBreak:* | This field is used to delineate the beginning of a new document.  If this field contains the letter "Y," then this is the first page of a document.  If this field is blank, then this page is not the first page of a document. |
| *FolderBreak:* | This field is used to delineate the beginning of a new folder in the same manner as the *DocumentBreak* field.  If this information is not available, then it may be left empty. |
| *BoxBreak:* | This field is used to delineate the beginning of a new box in the same manner as the *DocumentBreak* and *FolderBreak* fields.  If this information is not available, then it may be left empty. |
| *PageCount:* | Leave this field empty. |

Sample

```
LA-0000001,,E:\001\ LA-0000001.TIF,Y,,,
LA-0000002,,E:\001\ LA-0000002.TIF,,,,
LA-0000003,,E:\001\ LA-0000003.TIF,Y,,,
LA-0000004,,E:\001\ LA-0000004.TIF,,,,
LA-0000005,,E:\001\ LA-0000005.TIF,,,,
```

3. **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* or *Relativity®* database.

    a. The first line of the .DAT file must be a header record identifying the field names.

    b. The .DAT file must use the following *Concordance®* default delimiters:

| | | |
|---|---|---|
| Comma | | ASCII character 20 |
| Quote | þ | ASCII character 254 |
| Newline | ® | ASCII character 174 |

    c. Date fields should be provided in the format: MM/DD/YYYY.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

d. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

e. A TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the Begno. Do not include the text in the .DAT file.

f. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.

g. BegAtt and EndAtt fields must be two separate fields.

h. DateSent and TimeSent fields must be two separate fields.

i. All text and metadata associated with the document collection must be produced.

Sample of .DAT file (only includes a sample of fields)

```
þBegnoþþBegAttachþþEndAttachþþFileDescripþþFilenameþþRecordTypeþ
þEML-0030437þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030438þþþþþþOutlook Data FileþþRE: Your Question.htmþþþ
þEML-0030439þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030440þþþþþþOutlook Data FileþþLook.htmþþE-MAILþþþ
þEML-0030441þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030442þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030443þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030444þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030445þþþþþþOutlook Data FileþþATTN.htmþþE-MAILþþþ
þEML-0030446þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030447þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030448þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
```

The metadata for the document collection should be provided in a .DAT file using the field definition and formatting described below:

| Field | Description | Field Type | Required |
|---|---|---|---|
| Begno | Displays the document identifier of the first page in a document or the entire document of an E-Doc. | Text | Yes |
| Endno | Page ID of the last page in a document (for image collections only). | Text | Yes for Image Collections |
| BegAttach | Displays the document identifier of a parent record. Must be separate from EndAttach field. | Text | If it Exists |
| EndAttach | Displays the document identifier of the last attached .document in a family. Must be separate from BegAttach field. | Text | If it Exists |
| PgCount | Number of pages in a document (for image | Text | Yes for Image |



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

| Field | Description | Field Type | Required |
|---|---|---|---|
| | collections only). | | Collections |
| FileDescription | Description of a native file type. | Text | Yes |
| Filename | Original filename of a native file, | Text | Yes for Documents |
| RecordType | Displays the record type for each entry in the load file. | Text | Yes |
| ParentID | Displays the document identifier of the attachment record's parent (only for attachments). | Text | If it Exists |
| NumAttach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records. | Text | If it Exists |
| Attachmt | Populates parent records with document identifier of each attached record and is separated by semi-colons. | Text | If it Exists |
| Custodian | The owner of the record. | Text | Yes |
| From | Author of the e-mail message. | Text | Yes for email |
| To | Main recipient(s) of the e-mail message. | Text | Yes for email |
| CC | Recipient(s) of "Carbon Copies of the e-mail message. | Text | If it Exists |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | Text | If it Exists |
| EMail_Subject | Subject of the e-mail message. | Paragraph | Yes for email |
| DateSent | Sent date of an e-mail message.  Must be separate from TimeSent field. | MM/DD/YYYY | Yes for email |
| TimeSent | Time the e-mail message was sent. Must be separate from DateSent field. | Text | Yes for email |
| IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. | Text | If it Exists |
| ConversationIndex | This is a 44 character string of numbers and letters that is created in the initial email and which as 10 characters added for each reply or forward of an email. | Text | Yes for email |
| Conversation Family | E-mail thread identification.  Relational field for Conversion threads. | Text | Yes for email |
| EntryID | Unique identifier of e-mails in mail stores. | Text | If it Exists |
| Author | Author value pulled from metadata of the native file. | Text | If it Exists |
| Organization | Company extracted from metadata of the native file. | Text | If it Exists |
| Subject | Subject value extracted from metadata of the native file. | Paragraph | If it Exists |
| DateCreated | Creation date of the native file. | MM/DD/YYYY | If it Exists |
| DateLastMod | Date the native file was last modified. | MM/DD/YYYY | If it Exists |
| DateLastPrnt | Date the native file was last printed. | MM/DD/YYYY | If it Exists |
| MD5Hash | MD5 hash value. | Text | Yes |
| EDSource | Fully qualified original path to the source folder, files, and/or mail stores. | Text | Yes |



# CFTC Data Delivery Standards
### Effective: June 14, 2018

| Field | Description | Field Type | Required |
|---|---|---|---|
| NativeFile | Hyperlink to the native file. | Text | Yes |
| Textpath | Extracted text path. | Paragraph | Yes |
| Imagkey | Page ID of the first page of a document (for image collections only). Should be the same as the Begno field. | Paragraph | Yes |
| + Any other fields considered relevant by the producing party. | | | |

### 4.  Text

Text must be produced as separate text files, not as fields within the .DAT file. If text is included in the .DAT file as a field, the production will be rejected. Extracted text must be in a separate folder, one text file per document. The files must be named the same as the Begno field. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names).

### 5.  Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.  Native file documents must be named per the Begno field.
   b.  The full path of the native file must be provided in the .DAT file for the NativeFile field.
   c.  The number of native files per folder should not exceed 500 files.
   d.  There should be no special characters (including commas in the folder names).

## III.  Productions of Adobe PDF Files

PDF files are not substitutions for native files, as metadata is lost when PDFing native files.  PDF productions that are produced as native productions will be rejected unless the files were originally created using Adobe (e.g., fillable electronic PDF forms) or prior agreement is reached with the designated CFTC attorney.  In those exceptions, PDF productions should adhere to the following guidelines:

1.  PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2.  All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document; **a PDF cannot contain multiple documents. PDF packages will be rejected.**
3.  All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

## IV.    Productions of Website Content

Website content must be produced in native format and viewable in common web browsers (e.g. Internet Explorer, Mozilla Firefox, and Google Chrome) without the use of any additional third party software. If the only existing state of a website is in source code form, the party must produce a fully compiled version of the website in addition to the website source code with documentation of the process used to render, compile, and/or restore the website to an easily viewable form.

## V.    Productions of Forensic Images of Computer Media

Forensic images must be produced in a common/standard format to include (E01, Ex01, L01, Lx01, AD1, Raw Bitstream, and S01). An inventory of any original computer media must be provided with the image files. All associated log files from any forensic acquisition must be produced with the image files. The log files must contain a hash value, at a minimum (MD5, SHA-1, or higher), for authentication purposes. A chain of custody document must be provided to ensure the integrity of any digital evidence.

## VI.    Productions of Forensically Acquired Mobile Device Data

Forensically acquired mobile device data must be provided in the original format of the software/hardware used to capture the data. All original logs and authentication reports must also be provided with the respective data.

## VII.    FTP (File Transfer Protocol) Submission

The preferred method for producing data is via FTP. The CFTC has an FTP site set up that will allow transfer of data up to 2 GB per transmission.

If you are interested in sending documents using FTP, email **eLaw-CPI@cftc.gov** and they will provide you with the Commission's FTP credentials upon request.  When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.



**U.S. COMMODITY FUTURES TRADING COMMISSION**
**WASHINGTON, D.C. 20581**

Statement to Persons Providing Information about Themselves to
the Commodity Futures Trading Commission

This document sets forth your legal rights and responsibilities as a person requested to supply information about yourself voluntarily, as a person with recordkeeping obligations under the Commodity Exchange Act or CFTC regulations, or as a person directed to provide sworn testimony or produce documents pursuant to a subpoena of the Commodity Futures Trading Commission ("Commission" or "CFTC"). When applicable, this statement also provides important information about the deposition process for persons providing testimony. Unless stated otherwise, the information below applies whether you are providing information voluntarily, pursuant to the recordkeeping obligations of a registrant, or pursuant to subpoena.

## FALSE STATEMENTS AND DOCUMENTS

Any person who knowingly and willfully makes false or fraudulent statements, whether under oath or otherwise, or falsifies, conceals or covers up a material fact, or submits any false writing or document, knowing it to contain false, fictitious or fraudulent information, is subject to the criminal penalties set forth in 18 U.S.C. § 1001, which include imprisonment of not more than five years, imposition of a substantial fine under the Federal Sentencing Guidelines, or both.

It shall also be unlawful for any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this Act, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading, as set forth in Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2).

## PRIVACY ACT

To restrict unauthorized dissemination of personal information, the Privacy Act of 1974, 5 U.S.C. § 552a, limits an agency's ability to disclose such information.[1] Under the Privacy Act, the Commission may disclose protected information as follows: when the individual to whom the record pertains consents in writing; when officers and employees of the Commission need the record to perform their duties; when required by the terms of the Freedom of Information Act, 5 U.S.C. § 552; or when disclosure is for a "routine use" (i.e., one compatible with the purpose for which the information was collected).

---

[1] Individuals should refer to the full text of the Privacy Act, 5 U.S.C. § 552a, to the Commission's Regulations, 17 C.F.R. § 146, and the CFTC's compilation of System of Record Notices, 76 Fed. Reg. 5974 (Feb. 2, 2011), for a complete list of authorized disclosures and coverage of the Act. Only those disclosures arising most frequently are mentioned in this document.

Revised August 15, 2013



The Privacy Act also requires that, in certain situations, individuals requested to provide information about themselves receive notice of the following:

1.   AUTHORITY FOR SOLICITATION OF INFORMATION.

   a.  Recordkeeping for Registered Persons (other than Registered Swap Dealers and Major Swaps Participants).  Sections 4f, 4g and 4n of the Commodity Exchange Act, 7 U.S.C. §§ 6f, 6g, 6n, and Commission Regulations 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34, 1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7 and 33.7, 17 C.F.R. §§ 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34,1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7, 33.7, require Registered Persons other than Registered Swap Dealers and Major Swaps Participants to keep records and reports of transactions and positions in commodities for future delivery on any board of trade in the United States or elsewhere.  Registered Persons must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection by any representative of the Commission or the Department of Justice.

   b.  Recordkeeping for Members of a Registered Entity.  Commission Regulations 1.31, 1.35 and 1.37, 17 C.F.R. §§ 1.31, 1.35, 1.37, require Members of a Registered Entity to keep records and reports of transactions and positions in commodities for future delivery and options on any board of trade in the United States or elsewhere, as well as cash commodities.  Members of a Registered Entity must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection upon request by any representative of the Commission or the Department of Justice.  Commission Rule 1.40, 17 C.F.R. § 1.40, requires each Member of a Registered Entity to furnish to the Commission certain reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity.

   c.  Recordkeeping for Large Traders.  Section 4i of the Commodity Exchange Act, 7 U.S.C. § 6i, and Commission Regulations 1.31 and 18.05, 17 C.F.R. §§ 1.31, 18.05, require Large Traders to keep books and records showing, among other things, all details concerning all positions and transactions in the commodity, and in its products and by-products, whether executed through a contract for future delivery, an option contract or a cash contract, and whether such contract is executed through a board of trade, an exempt commercial market, an exempt board of trade, a foreign board of trade or an over-the-counter transaction.  All such books and records, and pertinent information concerning the underlying positions, transactions or activities, must be made available for inspection in a form acceptable to the Commission upon request by any representative of the Commission.

   d.  Recordkeeping for Registered Swap Dealers and Major Swaps Participants.  Sections 4r and 4s of the Commodity Exchange Act, 7 U.S.C. §§ 6r, 6s, and Commission Regulations 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, 46.2, require Swap Dealers ("SDs") and Major Swaps Participants ("MSPs") to keep records of all activities relating to their business with respect to swaps.  The records must be readily accessible throughout the life of the swap and for two years following its termination, and retrievable by the SD or MSP within three business days during the remainder of the retention period.  Each SD and MSP shall make available for

2



disclosure to and inspection by the Commission and its prudential regulator, as applicable, all information required by, or related to, the Commodity Exchange Act and Commission Regulations, including: (i) the terms and condition of its swaps; its swaps trading operations, mechanisms, and practices; financial integrity and risk management protections relating to swaps; and (iv) any other information relevant to its trading in swaps.  Such information shall be made available promptly, upon request, to Commission staff and the staff of the applicable prudential regulator, at such frequency and in such manner as is set forth in the Commodity Exchange Act, Commission regulations, or the regulations of the applicable prudential regulator.

e. Recordkeeping by Swaps Participants who are not Registered.  Section 4r of the Commodity Exchange Act, 7 U.S.C. § 6r, and Commission Regulations 1.31, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 45.2, 46.2, require non-SD/MSP counterparties to keep records with respect to each swap in which they are a counterparty.  Required records must be kept by all swap counterparties throughout the existence of a swap and for five years following termination of the swap.  In the case of a non-SD/MSP counterparty, the records must be retrievable by the counterparty within five business days throughout the retention period.

f. Investigations.  Sections 6(c) and 8(a) of the Commodity Exchange Act, 7 U.S.C. §§ 9, 12(a), and Commission Rule 11.2, 17 C.F.R. § 11.2, authorize the Commission to conduct investigations.  In the course of any investigation or proceeding, the Commission or an officer designated by the Commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require production of documents, and secure voluntary statements or submissions.

g. Whistleblowers.  Section 23 of the Commodity Exchange Act, 7 U.S.C. § 26, and Commission Rule 165, 17 C.F.R. § 165, authorize the Commission to obtain information from persons seeking to participate in the Commission's whistleblower program. Commission staff may request information from prospective whistleblowers to determine whether a tip or complaint relates to a violation of the Commodity Exchange Act, to further an investigation into any such violation, and/or to determine whether the person submitting the information is eligible to participate in the program.  The Commission will not disclose information that could reasonably be expected to reveal the identity of a whistleblower, except under the circumstances described in Commission Rule 165.4, 17 C.F.R. § 165.4, and Section 23(h)(2) of the Commodity Exchange Act, 7 U.S.C. § 26(h)(2).

2.   PURPOSE OF SOLICITATION OF INFORMATION.  The Commission's principal purpose in soliciting information from you is to determine whether any person has violated, is violating, or is about to violate the Commodity Exchange Act or the rules and regulations thereunder. In certain circumstances, the Commission may be obtaining information at the behest of a foreign futures authority under Section 12(f) of the Commodity Exchange Act, 7 U.S.C. § 16(f).

3.   EFFECT OF NOT SUPPLYING INFORMATION.
   a. Persons Directed to Provide Testimony or Produce Documents Pursuant to Subpoena. Disclosure of information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.  If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so.  If the Commission obtains such an order and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt.

3



b.  Persons Requested to Provide Information Voluntarily.  There are no direct effects or sanctions for failing to provide any or all of the requested information.  If you do provide information, however, you should note the sanctions for false statements and documents described above.

c.  Registered Persons.  Disclosure of requested books or records is mandatory pursuant to the provisions listed in paragraph 1.a. above.  Failure to submit or make available for inspection the requested information constitutes a violation of the Commodity Exchange Act and Commission Regulations and may result in any or all of the following under Sections 6(c), 6(d) or 6c of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13a-1, 15:

  1)  Institution of an action by the Commission to enjoin such a violation or enforce compliance;

  2)  Upon proper showing, granting of a temporary or permanent injunction or restraining order without bond;

  3)  Upon application by the Commission, issuance of writs of mandamus or orders offering like relief commanding compliance with the Commodity Exchange Act;

  4)  Imposition of a civil penalty of not more than the greater of $140,000 or such higher inflation adjusted amount as provided by Regulation 143.8, 17 C.F.R. §143.8 or triple the monetary gain to the person for each violation;

  5)  At the request of Commission, institution of an action by the Attorney General;

  6)  Prohibition of trading on, or subject to the rules of, a registered entity and require all registered entities to refuse the person all privileges;

  7)  Suspension or revocation of registration with the Commission;

  8)  Required payment of restitution to customers for damages proximately caused by violations;

  9)  Entry of a cease and desist order;

  10)  Imposition of a restraining order prohibiting you from destroying, altering or disposing of, or refusing to allow authorized representatives of the Commission to inspect, when and as requested, such books, records or other documents; and

  11)  Imposition of a restraining order prohibiting you from withdrawing, transferring, removing, dissipating or disposing of any funds, assets or other property.

d.  Whistleblowers.  Failure to provide information requested by Commission staff in relation to a whistleblower submission may affect your ability to receive a whistleblower award, or the potential amount of an award.

4.  ROUTINE USES OF INFORMATION.  The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate.  Whether or not the Commission makes its files available to



other governmental agencies is, in general, a confidential matter between the Commission and such other government agencies.  Information which you provide may be used in the routine operation of the Commission, which includes law enforcement, review of legislative and regulatory proposals, regulation of the commodity futures and swaps markets, and review of reports and documents filed with the Commission.

Specific routine uses include the following:[2]

a. Information may be used by the Commission in any administrative proceeding before the Commission, in any injunctive action authorized under the Commodity Exchange Act, or in any other action or proceeding in which the Commission or its staff participates as a party or the Commission participates as amicus curiae.

b. Information may be disclosed to the Department of Justice, the Securities and Exchange Commission, the United States Postal Service, the Internal Revenue Service, the Department of Agriculture, the Office of Personnel Management, and to other Federal, state, local, territorial or tribal law enforcement or regulatory agencies for use in meeting their statutory and regulatory requirements.

c. Information may be given to any "registered entity," as defined in Section 1a of the Commodity Exchange Act, 7 U.S.C. § 1a, if the Commission has reason to believe that such information will assist the registered entity in carrying out its responsibilities under the Act.  Information may also be given to any registered futures association registered under Section 17 of the Commodity Exchange Act, 7 U.S.C. § 21, (e.g., the National Futures Association) to assist it in carrying out its self-regulatory responsibilities under the Act, and to any national securities exchange or national securities association registered with the Securities and Exchange Commission to assist those organizations in carrying out their self-regulatory responsibilities under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

d. At the discretion of the Commission staff, information may be given or shown to anyone during the course of a Commission investigation if the staff has reason to believe that the person to whom it is disclosed may have further information about the matters discussed therein, and those matters appear relevant to the subject of the investigation.

e. Information may be included in a public report issued by the Commission following an investigation, to the extent that this is authorized under section 8 of the Commodity Exchange Act, 7 U.S.C. § 12.  Section 8 authorizes publication of such reports but contains restrictions on the publication of certain types of sensitive business information developed during an investigation.  In certain contexts, some of this information might be considered personal in nature.

f. Information may be disclosed to a Federal agency in response to its request in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract or the issuance of a license, or a grant or other benefit by the requesting agency, to the extent that the information may be relevant to the requesting agency's decision on the matter.

---

[2]  See CFTC compilation of System of Record Notices, including routine uses, at 76 Fed. Reg. 5974 (Feb. 2, 2011).

Revised August 15, 2013



g.  Information may be disclosed to a prospective employer in response to its request in connection with the hiring or retention of an employee, to the extent that the information is believed to be relevant to the prospective employer's decision in the matter.

h.  Information may be disclosed to any person, pursuant to Section 12(a) of the Commodity Exchange Act, 7 U.S.C. § 16(a), when disclosure will further the policies of that Act or of other provisions of law.  Section 12(a) authorizes the Commission to cooperate with various other government authorities or with "any person."

i.  Where information, either alone or in conjunction with other information indicates a violation or potential violation of law – criminal, civil or regulatory in nature – the relevant information may be disclosed to the appropriate Federal, state, local, territorial, tribal or foreign law enforcement authority or other appropriate entity charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

j.  Information may be disclosed to the General Services Administration, or the National Archives and Records Administration, for the purpose of records management inspections conducted under the authority of 44 U.S.C. §§ 2904 and 2906.

k.  Information may be disclosed to foreign law enforcement, investigatory or administrative authorities in order to comply with requirements set forth in international arrangements, such as memoranda of understanding.

l.  Information may be disclosed to contractors, grantees, volunteers, experts, students and others performing or working on a contract, service, grant, cooperative agreement or job for the Federal government when necessary to accomplish an agency function.

m. Information may be disclosed to the Merit Systems Protection Board, including the Office of Special Counsel, for the purpose of litigation, including administrative proceedings, appeals, special studies of the civil service and other merit systems.

n.  Information may be disclosed to the Department of Justice or in a proceeding before a court, adjudicative body or other administrative body which the agency is authorized to appear, when:

    i.  the agency, or any component thereof; or

    ii.  any employee of the agency in his or her official capacity; or

    iii.  any employee of the agency in his or her official capacity where the Department of Justice or the agency has agreed to represent the employee; or

    iv.  the United States, when the agency determines that litigation is likely to affect the agency or any of its components;

is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation; provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

6



o. Information may be disclosed to a Member of Congress or staff acting upon the Member's behalf when the Member or staff requests the information on behalf of, or at the request of, the individual who is the subject of the record.

p. Information related to any traders or the amount or quantity of any commodity purchased or sold by such traders may be disclosed to any committee of either House of Congress upon its request, acting within the scope of its jurisdiction, pursuant to the Commodity Exchange Act, including Section 8(e) of such Act, 7 U.S.C. § 12(e), and the rules and regulations promulgated thereunder.

q. Information may be disclosed to another Federal agency, to a court or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

Revised August 15, 2013



r.  Information may be disclosed to appropriate agencies, entities and individuals when:

    i.  the Commission suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised;

    ii.  the Commission has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the Commission or another agency or entity) that rely upon the compromised information; and

    iii.  the disclosure made to such agencies, entities, and individuals is reasonably necessary to assist in connection with the Commission's efforts to respond to the suspected or confirmed compromise and prevent, minimize or remedy such harm.

### FREEDOM OF INFORMATION ACT

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Commission's rules and regulations pursuant thereto, 17 C.F.R. § 145, generally provide for disclosure of information to the public, unless information falls within a specified exemption.  Commission Rule 145.9, 17 C.F.R. § 145.9, establishes the procedure by which you may request that certain sensitive information not be disclosed pursuant to a FOIA request.

### INFORMAL PROCEDURE RELATING TO THE RECOMMENDATION OF ENFORCEMENT PROCEEDINGS

As a result of facts gathered in an investigation, the Division of Enforcement may decide to propose an enforcement action against one or more individuals.  Under the Informal Procedure Relating to the Recommendation of Enforcement Proceedings,[3] the Division of Enforcement, in its discretion, may inform persons to be named in such actions of the nature of the allegations pertaining to them. The Division may also, in its discretion, advise such persons that they may submit a written statement before the consideration by the Commission of any staff recommendation for the commencement of the proceeding.  Unless otherwise provided, such written statements must be submitted within 14 days after persons are informed by the Division of Enforcement of the nature of pertaining to the allegations pertaining to them.

### SMALL BUSINESS REGULATORY AND ENFORCEMENT FAIRNESS ACT

Your comments are important.  If you wish to comment on the enforcement or regulatory actions of the Commodity Futures Trading Commission, please call the Small Business Liaison in the Office of General Counsel at (202) 418-5120.  You may also wish to contact the Small Business and Agriculture Regulatory Enforcement Ombudsman, or one of the 10 Regional Fairness Boards, which were established by the Small Business Regulatory and Enforcement Fairness Act.  The Ombudsman and Boards receive comments from small businesses about Federal agency enforcement actions.  The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business.  If you wish to contact the Ombudsman to comment on the enforcement actions of the CFTC, please call 1-888-REG-FAIR (1-888-734-3247).

---

[3]  The Informal Procedure has been adopted as Appendix A to Part 11 of the Commission's Regulations, 17 C.F.R. § 11, Appendix A.  Appendix A more fully sets forth the substantive and procedural provisions of the Informal Procedure.

Revised August 15, 2013

**EXHIBIT B**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

**Hunt, Brian**

| | |
|---|---|
| **From:** | UPS Quantum View <pkginfo@ups.com> |
| **Sent:** | Wednesday, November 20, 2019 9:32 AM |
| **To:** | Hunt, Brian |
| **Subject:** | [EXTERNAL] UPS Delivery Notification, Tracking Number 1ZA4796A2592893869 |



### Your package has been delivered.

**Delivery Date:**   Wednesday, 11/20/2019
**Delivery Time:**   09:24 AM

At the request of COMMODITY FUTURES TRADING COMM this notice alerts you that the status of the shipment listed below has changed.

## Shipment Detail

| | |
|---|---|
| **Tracking Number:** | **1ZA4796A2592893869** |
| **Ship To:** | C/O LEGAL SERVICES LLC<br>FIRST STATE DEPOSITORY COMPANY LLC<br>1013 CENTRE RD<br>ROOM 403<br>WILMINGTON, DE 19805<br>US |
| **UPS Service:** | UPS NEXT DAY AIR |
| **Number of Packages:** | 1 |
| **Shipment Type:** | Letter |
| **Delivery Location:** | RECEIVER |
| | HOWIE |
| **Reference Number 1:** | A9137 |


**Keep holiday gifts a surprise** Earn up to $35 in rewards when you pick up your packages at a UPS Access Point® location   SEE HOW   Terms & Conditions apply


Download the UPS mobile app

1

© 2019 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email. UPS will not receive any reply message.

**Review the UPS Privacy Notice**

**For Questions, Visit Our Help and Support Center**

**EXHIBIT C**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

**Hunt, Brian**

| | |
|---|---|
| **From:** | UPS Quantum View <pkginfo@ups.com> |
| **Sent:** | Wednesday, November 20, 2019 10:07 AM |
| **To:** | Hunt, Brian |
| **Subject:** | [EXTERNAL] UPS Delivery Notification, Tracking Number 1ZA4796A2592108252 |



## Your package has been delivered.

**Delivery Date:**   Wednesday, 11/20/2019
**Delivery Time:**   10:01 AM

At the request of COMMODITY FUTURES TRADING COMM this notice alerts you that the status of the shipment listed below has changed.

# Shipment Detail

| | |
|---|---|
| **Tracking Number:** | **1ZA4796A2592108252** |
| **Ship To:** | FIRST STATE DEPOSITORY COMPANY LLC<br>100 TODDS LN<br>WILMINGTON, DE 19802<br>US |
| **UPS Service:** | UPS NEXT DAY AIR |
| **Number of Packages:** | 1 |
| **Shipment Type:** | Letter |
| **Delivery Location:** | RECEIVER |
| | HIGGINS |
| **Reference Number 1:** | A9137 |

 **Keep holiday gifts a surprise** Earn up to $35 in rewards when you pick up your packages at a UPS Access Point® location  SEE HOW  Terms & Conditions apply 

 Download the UPS mobile app

© 2019 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email. UPS will not receive any reply message.

**Review the UPS Privacy Notice**

**For Questions, Visit Our Help and Support Center**

# EXHIBIT D

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS



**COMMODITY FUTURES TRADING COMMISSION**
1155 21ˢᵗ St. NW
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5531

Division of
Enforcement

BRIAN A. HUNT
TRIAL ATTORNEY
(202) 418-5095
bhunt@cftc.gov

January 13, 2020

**By UPS Next Day Air**

First State Depository Company, LLC
100 Todds Lane
Wilmington, DE 19802-3212

First State Depository Company, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

To Whom It May Concern:

We write regarding the administrative subpoena (the "Subpoena") that the Commodity Futures Trading Commission's Division of Enforcement (the "Division") issued to First State Depository Company, LLC ("First State") on November 19, 2019. The Subpoena specified a return date of December 4, 2019, and was delivered to First State on November 20, 2019, where it was signed for by an individual with the last name Higgins.

When the return date passed without First State producing any documents or reaching out to the Division to seek an extension, we called First State's offices on December 12, 2019. We were told by a receptionist that was no one was available to speak with us, and we left a message asking for someone to contact us as soon as possible. When no one contacted us, we called First State again on December 17, 2019, asking to speak with First State's Chairman, Robert Higgins. We were told by an individual named Danielle Leins that Mr. Higgins was out of the office and that no one else in the office was able to discuss the Subpoena with us. Ms. Leins promised to contact Mr. Higgins and said that he would be in touch with us once he was back in the office after Christmas. Notwithstanding that promise, neither Mr. Higgins nor anyone else from First State reached out to us after Christmas, and so we called back on January 2, 2020 and spoke with Ms. Leins again. Ms. Leins indicated that Mr. Higgins was again out of the office, but said that her understanding was that Mr. Higgins or someone else from First State was supposed to have reached out to us about the Subpoena. We indicated that no one had. Ms. Leins promised to call Mr. Higgins and have him get in touch with us. He did not do so, and so we called again on January 6, 2020 and were redirected by an individual named Donna Rodriguez to a voicemail

box for Argent Asset Group.  We left a message requesting immediate compliance with the Subpoena and asking that someone call us back as soon as possible.  Neither has occurred.

It has now been more than one month since the Subpoena's return date, but we have not received a single document from First State, nor any explanation of when First State intends to comply with the Subpoena, why responsive documents have not or cannot be produced, or why First State is unwilling to comply.  On multiple occasions, First State representatives have confirmed receipt of the Subpoena and promised that someone would reach out to us.  That has not happened.  Indeed, no one from First State has ever affirmatively reached out to us to discuss the Subpoena; every communication has been initiated by the Division.

As we have repeatedly stated during our phone calls and voicemails, our preference is that First State choose to comply with the Subpoena, which was duly authorized and served.  However, as is noted prominently on the face of the Subpoena, if First State refuses to comply, we are authorized to, and intend to, commence an action in federal court seeking enforcement of the Subpoena.  If First State's continued non-compliance requires us to pursue this approach, we intend to seek reimbursement of all costs and legal fees and any other remedies available to us.

Accordingly, we demand that First State immediately comply with the Subpoena and produce all responsive, non-privileged documents within its possession, custody, or control.  Please contact me immediately at (202) 418-5095 to make arrangements for compliance.  You may also contact Michael Solinsky at (202) 418-5384.

Sincerely,

Brian A. Hunt
Trial Attorney

Enclosures:
1. Subpoena, Cover Letter, and Attachments

cc:   Danielle Leins (via email)

[Enclosures Intentionally Omitted from This Copy for Filing]

**EXHIBIT E**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

BRIAN A. HUNT
TRIAL ATTORNEY
(202) 418-5095
bhunt@cftc.gov

January 14, 2020

**By UPS Next Day Air**

Argent Asset Group LLC
100 Todds Lane
Wilmington, DE 19802-3212

Argent Asset Group LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

To Whom It May Concern:

Pursuant to Sections 6(c) and 8(a) of the Commodity Exchange Act, as amended, 7 U.S.C. §§ 15 and 12(a), and Section 11.4 of the Commodity Futures Trading Commission's Regulations, 17 C.F.R. §11.4, enclosed is a true and complete copy of an administrative subpoena commanding that you produce by **5:00 p.m. on February 7, 2020** certain documents and other materials to the Commission, as set forth in Schedule A to the subpoena.

Complete instructions for complying with the subpoena may be found in the subpoena and its attachments. The Division requires that you produce all electronic documents in native file format in accordance with the attached *CFTC Data Delivery Standards*. The Division asks that the documents be sent either electronically or by overnight delivery; do not produce any documents via the U.S. Postal Service. Please email **eLaw-CPI@cftc.gov** if you wish to send the documents via the Commission's secure file transfer protocol ("FTP"). You will receive a response with the Commission's FTP credentials. When sending documents via FTP, you MUST include the matter number A9137, the Commission point of contact, and a cover letter. Overnight deliveries should be sent to:

Brian A. Hunt
1155 21st Street NW
Mailstop CPI
Washington, DC, 20581

Please include with your response a cover letter stating whether your response is complete.  If your response is not complete, the cover letter should explain any deficiencies. Also attached please find a copy of the Commission's *Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission*, which sets forth information explaining certain rights and obligations of witnesses and uses of information submitted to the Commission.

If you have any questions regarding this subpoena, please do not hesitate to contact me at (202) 418-5095, or Michael Solinsky at (202) 418-5384.

Sincerely,

Brian A. Hunt
Trial Attorney

Enclosures:
1. Subpoena
2. Instructions, Definitions, and Schedule A to Subpoena
3. CFTC Data Delivery Standards
4. Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission

cc:  Robert Higgins (via email)

2



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

# SUBPOENA
# *DUCES TECUM*

**TO:**   Argent Asset Group LLC
100 Todds Lane
Wilmington, DE 19802-3212

Argent Asset Group LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

**YOU ARE HEREBY COMMANDED** to produce all books, papers, documents, and other tangible things specified in the attached **Schedule A** in connection with an investigation by the Commodity Futures Trading Commission ("Commission") in the matter of:

**West Hills Capital LLC and Joseph Unger**

Responsive records are to be produced to Brian Hunt, Michael Solinsky or others at the Commission's headquarters, Three Lafayette Centre, 1155 21st Street, N.W., Suite 7000, Washington, DC 20581, by close of business on **February 7, 2020**, in accordance with the instructions attached to this subpoena.

**FAILURE TO COMPLY WITH THIS SUBPOENA MAY RESULT IN THE COMMENCEMENT OF A LEGAL ACTION IN THE UNITED STATES DISTRICT COURT TO COMPEL COMPLIANCE WITH THE REQUIREMENTS HEREOF.**

Issued this 14th day of January, 2020, at Washington, DC by:

*/s/Brian A. Hunt*
Brian A. Hunt
Designated Officer
Commodity Futures Trading Commission

CFTC Form 10 (6-83)

## RETURN OF SERVICE

In the case of a natural person:

    [ ]    handing it to the person named herein.

    [ ]    leaving it at the person's office with the person in charge, namely:

    [ ]    leaving it at the person's office in a conspicuous place, to wit:

    [ ]    leaving it at the person's usual place of abode, namely:

    [ ]    mailing by UPS NEXT DAY AIR to the following address:

    [ ]    another method by which actual notice is given, to wit:

**In the case of service upon other than a natural person:**

    [ ]    handing it to a registered agent for service or other officer, director or agent in charge of such office, namely (name & title):

    [X]    mailing by UPS NEXT DAY AIR to such agent or representative, namely (name, title & address):

        Registered Agents Legal Services, LLC
        1013 Centre Road Suite 403S
        Wilmington, DE 19805-1270

    [X]    another method by which actual notice is given, to wit:

    Mailing by UPS NEXT DAY AIR to:

        Argent Asset Group LLC
        100 Todds Lane
        Wilmington, DE 19802-3212

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I caused this subpoena to be served in accordance with the method noted above.*

Dated:  January 14, 2020

          */s/Brian A. Hunt*
          Brian A. Hunt

# INSTRUCTIONS FOR
# SUBPOENA *DUCES TECUM* ISSUED TO
# ARGENT ASSET GROUP LLC

1. Each page or object of the production must be numbered sequentially beginning with 000001, and the production must be accompanied by a sworn affidavit authenticating the materials and certifying that the production is complete. That affidavit must include the following information:

    a. Identification, by name and title, of all persons involved in the search for the specified materials;

    b. A description of the search for the specified materials;

    c. A statement that the search was complete and that all responsive materials are being produced;

    d. Identification of each document, or where appropriate, each group or category of documents, responsive to each paragraph of the attached Schedule by reference to the numbers you have assigned to them; and

    e. A statement as to whether the materials produced were made and kept in the course of your regularly conducted business, and whether it was your regular practice to make and keep such materials.

2. If you do not possess, control, or have custody of any documents pursuant to any numbered paragraph in the attached Schedule, then you must so affirmatively state in your affidavit;

3. If you decline to produce a document because you believe that the document has been destroyed, provide the following information for this document in your affidavit:

    a. the type, title, date, and author or preparer of the document;

    b. a description of the document's subject matter and physical size;

    c. the identity and address of each recipient of the original or a copy of the document, together with the date or approximate date on which each recipient received the document;

    d. the identity and address of all other persons to whom the contents of the document have been disclosed, the date such disclosure took place, and the means of such disclosure;

    e. the date the document was destroyed; and

    f. the person who ordered or authorized such destruction.

4.  If you decline to produce an existing document on the basis of a claim of privilege or for any other reason, provide the following information for this document in your affidavit:

    a.  the type, title, date, and author or preparer of the document;

    b.  a description of the document's subject matter and physical size;

    c.  the identity and address of each recipient of the original or a copy of the document, together with the date or approximate date on which each recipient received the document;

    d.  the identity and address of all other persons to whom the contents of the document have been disclosed, the date such disclosure took place, and the means of such disclosure; and

    e.  the nature of the privilege or rule of law relied upon, including who is asserting the privilege or rule and the basis for asserting that privilege or rule, or other reason for non-production.

5.  A complete copy of each document shall be submitted even though only a portion of the document is responsive.  The document shall not be edited, redacted, cut, or expunged and shall include all covering letters and memoranda, transmittal slips, appendices, tables or other attachments and all other documents referred to in the document or attachments.  If you make any redactions based upon a claim of privilege, such redactions must be clearly marked.

6.  If a document is called for by more than one numbered paragraph in the attached Schedule, it is not necessary to submit more than one copy of the document.  Reference may be made to production made pursuant to a prior numbered paragraph.

7.  Legible, true, correct, and complete photocopies may be submitted in lieu of original documents, provided that the originals are retained in their current state and are available for inspection if requested by Commission staff and provided further that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any Commission proceeding or court of law.

8.  Unless otherwise specifically provided herein, you may provide responsive documents in electronic form.  The Commission requests that all such electronic documents be produced in accordance with the instructions in the attached CFTC Data Delivery Standards, dated June 14, 2018.

9.  This subpoena for production of documents is continuing in nature.  If additional responsive documents are located subsequent to production, you are to supplement your production accordingly.

10.  No agreement purporting to modify, limit or otherwise vary this subpoena shall be valid and binding on the Division of Enforcement or Commission unless confirmed or

acknowledged in writing (or made of record in court) by a duly authorized representative thereof.


## NOTICE CONCERNING DOCUMENT DESTRUCTION

Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or object, in an official proceeding; or (D) be absent from an official proceeding to which such person has been summoned by legal process; or (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than ten years, or both.  18 U.S.C. § 1512(b).

# DEFINITIONS FOR
# SUBPOENA *DUCES TECUM* ISSUED TO
# ARGENT ASSET GROUP LLC

The following definitions and instructions are expressly incorporated into each specific demand for production in Schedule A as if fully stated therein:

1. **"You"** or **"your"** or **"Argent"** refers to Argent Asset Group LLC and any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

2. **"First State Depository"** refers to First State Depository Company, LLC and any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

3. **"Joe Unger"** or **"Unger"** refers to the natural person Joseph Unger, in both his personal capacity and in his capacity as an owner, principal, member, operator, manager, officer, director, employee, custodian, or shareholder of West Hills Capital, as well as any agent, employee, or other person acting on Unger's behalf.

4. **"West Hills Capital"** refers to West Hills Capital LLC, and any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

5. **"And"** as well as **"or"** shall be construed both in the conjunctive and disjunctive as needed to bring within the scope of any portion of the subpoena all documents that otherwise might be construed as outside its scope.

6. **"Commodity Source"** means any transaction administrator, wholesale precious metals dealers, any firms holding themselves out as a precious metals "clearing" firm or "clearinghouse," or any other physical commodity sources used to acquire or sell or dispose of precious metals to fulfill West Hills Capital's obligations to its Customers.

7. **"Communication"** shall be construed broadly and means all manners of transmitting or receiving information, opinions, or thoughts, orally, in writing, in person, telephonically, electronically, or otherwise, and includes without limitation email, text messages, instant messages, messages sent through smartphone applications, content posted on or through websites or social media platforms, voice-mail, recordings of telephone calls, agreements, account statements, and account snapshots, as well as any and all written or electronic materials transmitted by a person or corporate entity to another person or corporate entity.

6

8.   **"Concern"** and **"concerning"** mean connected with, constituting, describing, evidencing, involving, pertaining to, referring to, or regarding.

9.   **"Customer"** refers to any person or entity with which Argent did business for the purposes of investment, account management, retirement planning, trading, or other services in connection with the purchase or sale of commodities, commodity futures, or commodity options, whether domestic or foreign.

10.   **"Document"** is synonymous in meaning and equal in scope to the usage of that term in Federal Rule of Civil Procedure 34(a).  Accordingly, "**document**," for purposes of this subpoena, means any memorialization, whether typed, written, recorded, printed, or otherwise reproduced by any process or by hand, and includes, but is not limited to: agreements; contracts; correspondence; facsimile or E-mail transmissions; telephone logs and records; memoranda; diaries; graphs; formulas; models; mathematical and statistical data; reports; notebooks; manuals; charts; plans; journals; ledgers; financial statements; information stored on or generated by computer disks, hard drives, tapes or other electronic data storage systems; bank records; brochures; electronically recorded information such as audiotape or videotape recordings; microfilm or microfiche; summaries, analyses, commentaries, minutes, transcripts, or other records of interviews, meetings, conferences, conversations or discussions; as well as all drafts of the foregoing and any copies bearing marks or notations not found on the original.

The definition of "documents" used in this subpoena includes information stored in or accessible through, computer or other information retrieval systems.  In determining where responsive documents in this form might be located, you are required to search all equipment or media that may contain "documents" as defined herein, whether maintained by you or by a third party on your behalf, including but not limited to:

   a.   Laptops, notebooks, hand-helds, Personal Digital Assistants (PDAs), portable electronic mail or document devices and other portable computers, personal computers, workstations, minicomputers, or mainframes, whether used by single or multiple users, or as servers or storage facilities, and any home computers or cell phones;

   b.   Cloud computing, internet data storage, social media accounts, and mobile telephone programs or applications; and

   c.   Backup and archival disks, tapes, and documents, and other forms of offline storage, whether maintained by your or by a third party on your behalf.

11.   **"Fee"** means any storage fee, sales commission, finance charge, service charge, shipping charge, sales or use tax, transaction charge, or any other type of commission or charge assessed, requested, or paid.

12.   **"Including"** or **"includes"** are used in the broadest sense of the term and specification of a particular matter included in a request is not meant to exclude any other documents that might be responsive to a specific request.

13. **"Person"** or **"entity"** shall include any natural person or any business, legal, or governmental entity or association, and any such person's or entity's directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations.

14. **"Possession"** means actual or constructive possession and includes any document within your custody or control, any document that you have a legal right to obtain from another, and any document within the possession of your agents, employees, accountants, attorneys or representatives.

15. **"Reflect"** and **"reflecting"** mean manifesting, revealing, showing or evidencing.

16. **"Relating to"** means connected with or to, concerning, constituting, describing, evidencing, memorializing, involving, pertaining to, referring to, reflecting, or regarding.

17. **"Silver Programs"** means the investment program that Argent referred to as the Maximus Silver Program, the investment opportunity that West Hills Capital advertised to West Hills Capital Customers as the "Silver Deposit Account" program or "Silver Lease Program," as well as any other program by which individuals or entities could purportedly earn monthly income by leasing, hypothecating, pledging, or loaning out precious metals coins, precious metals bullion, or precious metals tokens that were purchased, nominally acquired, or invested in through West Hills Capital, Argent, First State, or any other entity or agent.

18. **"Subpoena Period"** means December 31, 2011 through the present.

19. **"West Hills Capital Customer"** refers to any person or entity from whom West Hills Capital or Unger accepted funds for investment, account management, retirement planning, trading, or other services in connection with the purchase or sale of commodities, commodity futures, or commodity options, whether domestic or foreign.

20. The use of the singular shall be construed to include the plural.

# SCHEDULE A

# DOCUMENTS TO BE PRODUCED BY
# ARGENT ASSET GROUP LLC

*The foregoing definitions and instructions are expressly incorporated into each specific request for production as if fully stated therein.  For the Subpoena Period, unless otherwise described, you are required to produce the following documents in your possession, custody, or control:*

1.   All documents and communications concerning the Silver Programs, including but not limited to:

    a.   All communications with Customers, metals dealers, Commodity Sources, Unger, West Hills Capital, or West Hills Capital Customers concerning or relating to the Silver Programs;

    b.   All agreements regarding the Silver Programs, including all agreements with Customers, metals dealers, Commodity Sources, Unger, West Hills Capital, or West Hills Capital Customers;

    c.   All documents regarding the leasing, hypothecation, pledging, or loaning out of American Silver Eagle coins or other coins or bullion, including contracts, agreements, invoices, statements, wire transfers, checks, accounting statements, ledgers, spreadsheets, reports, or any other documents calculating or reporting how lease income was generated through the Silver Programs;

    d.   All documents regarding the payment of money to, or receipt of money from, any metals dealer or Commodity Source relating to the Silver Programs;

    e.   Documents sufficient to identify the names, addresses, telephone numbers, and email addresses of all persons or entities who hold or held an interest in coins or precious metals that were part of the Silver Programs;

    f.   All documents regarding transactions between Argent and any Commodity Source relating to the Silver Programs;

    g.   All documents and operational procedures regarding the administration of the Silver Programs or the recordation of the Silver Programs on the books and records of Argent or First State, including the reports created, updated, and maintained by Argent and First State for the Silver Programs; as well as documents sufficient to identify who was responsible for generating such reports, making such changes to such reports, or supervising or authorizing changes to such reports;

    h.   Documents sufficient to identify the business relationship and flow of funds between Argent and First State Depository in connection with the buying, selling, storing, transferring, leasing, hypothecation, pledging, or loaning out of American

Silver Eagle coins or other coins or bullion, including in connection with the Silver Programs.

i.   Documents sufficient to identify:

    i.   The counterparties to whom Customers' American Silver Eagle coins were leased,

    ii.   The number of coins or amount of bullion leased for each transaction,

    iii.   The start and end date of each lease,

    iv.   Date of each lease payment received, and

    v.   Total payments received from each counterparty; and

j.   All documents in your possession concerning complaints regarding the Silver Programs, including settlement agreements and all pleadings from any lawsuit regarding those programs.

2.   A spreadsheet or documents sufficient to identify the number and weight of American Silver Eagle coins or other coins or bullion bought and sold with, through or on behalf of or for the benefit of Argent for each of the following categories, and each account within each category, on a monthly basis, from December 31, 2011 to the present:

a.   Customers;

b.   Metals dealers;

c.   West Hills Capital;

d.   Unger;

e.   West Hills Capital Customers;

f.   Persons to whom West Hills Capital Customers' American Silver Eagle coins or other coins or bullion were leased, hypothecated, pledged, or loaned; and

g.   The Silver Programs

3.   All documents relating to the storage, custody, purchase, or sale of precious metals or precious metals coins or precious metal tokens or bullion on behalf of Unger, West Hills Capital, or West Hills Capital Customers, including, but not limited to:

a.   All account opening documents, financing agreements, sales agreements, invoices, promissory notes, loan agreements, delivery agreements, contracts, or other agreements;

b.   All periodic (e.g. monthly, quarterly, annual) and other account statements;

c.    All documents concerning the amount of precious metals stored for each entity;

d.    All insurance policies or agreements;

e.    All documents relating to West Hills Capital's proprietary precious metals inventory, including any listing of precious metals owned, titled, controlled, or in the name of West Hills Capital (as opposed to West Hills Capital Customers);

f.    All documents relating to the delivery of precious metals to West Hills Capital Customers, including, but not limited to, warrants, documents of title, warehouse receipts, weight certificates, or other documents showing the weight, quantity, and quality of the precious metals delivered, as well as the date, manner, method, and form of delivery; and

g.    All documents concerning Fees.

4.    All year-end financial statements for Argent (including, at a minimum, income statements and balance sheets), and all documents concerning year-end financial statements.  To the extent year-end financial statements do not yet exist for fiscal year 2019 or 2020, please produce, at a minimum, income statements and balance sheets as of the end of each quarter in 2019.



# CFTC Data Delivery Standards

## Effective:  June 14, 2018

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).  Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.



# CFTC Data Delivery Standards

*Effective: June 14, 2018*

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).

**\*\*Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.\*\***

## Contents

General Instructions ........................................................................................................................ 2

Electronic Discovery Protocols ...................................................................................................... 3

Delivery Formats ............................................................................................................................ 3

   I.   Native File Production ............................................................................................................ 3

      1.   Emails ................................................................................................................................ 3

      2.   Account Statements .......................................................................................................... 3

      3.   Instant Messages (IMs) .................................................................................................... 3

      4.   Audio Files ........................................................................................................................ 4

      5.   Video Files ........................................................................................................................ 4

      6.   Transcripts ........................................................................................................................ 5

   II.   Imaged Collections ................................................................................................................ 5

      1.   Images .............................................................................................................................. 5

      2.   Concordance Image® Cross-Reference File ................................................................... 6

      3.   Data File .......................................................................................................................... 6

      4.   Text .................................................................................................................................. 9

      5.   Linked Native Files .......................................................................................................... 9

   III.   Productions of Adobe PDF Files ........................................................................................... 9

   IV.   Productions of Website Content .......................................................................................... 10

   V.   Productions of Forensic Images of Computer Media .......................................................... 10

   VI.   Productions of Forensically Acquired Mobile Device Data ................................................ 10

   VII.   FTP (File Transfer Protocol) Submission ........................................................................... 10



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

## General Instructions

Please send documents via overnight mail (1155 21st Street NW, Mailstop CPI, Washington, DC, 20581) or use the Commission's secure file transfer protocol ("FTP"); **do <u>not</u> produce any documents via the U.S. Postal Service**.  If you are interested in sending documents using FTP, email <u>eLaw-CPI@cftc.gov</u> and they will provide you with the Commission's FTP credentials upon request.  When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.

<span style="color:red">(Note:  An Adobe PDF file is <u>**not**</u> considered a native file unless the document was initially created as a PDF.)</span>

In the event produced files require the use of proprietary software not commonly found in the workplace, the CFTC will explore other format options with the producing party.

In regards to imaged collections, the use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.

General requirements for <u>ALL</u> document productions are:

1. <u>**Production of data via email is unacceptable.**</u>
2. Reference the specific portion of the request to which you are responding, along with a summary of the number of files in the production, so that we can confirm everything is loaded into our review system.
3. All native file submissions must be organized **by custodian** unless otherwise instructed.
4. All load-ready collections should include only one data load file and one image pointer file.
5. All load-ready text must be produced as separate text files, not as fields within the .DAT file.
6. All load-ready collections should account for custodians in the custodian field.
7. Audio files should be separated from data files if both are included in the production.
8. The preferred method of submission is via File Transfer Protocol (FTP). (See details in Section IV on page 10.)
9. Large productions (any production above 10 GB) must be submitted to the CFTC on media such as a CD, DVD, thumb drive, or hard drive. The media must be clearly marked with the following:
    a. Matter name
    b. Producing party
    c. Production date
    d. Disk number (1 of X), if applicable
10. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**.  Special characters are not permitted. Any data received with file names or folders with special characters, including the comma, will be rejected.  The combined length of the file path with folder and file name should not exceed 255 characters.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

11. Include information within the cover letter regarding the time zone used, if emails or other electronic files were standardized during conversion.

12. If you want the submitted material returned at the conclusion of the investigation you must indicate that preference in writing when the material is produced, **and** the media on which it is provided **must** be encrypted.

13. All production data containing sensitive or personally identifiable information must be encrypted using FIPS 140 compliant software.

14. Provide passwords for all password-protected files or hardware in a separate transmittal.

15. All productions should be checked and produced free of computer viruses and malware. Productions containing viruses or malware may not be accepted and will require a new production.

16. If the production is created using Relativity, Duplicate Spare = No must not be applied.

## Electronic Discovery Protocols

If a producing party wants to employ winnowing techniques to reduce the volume of production material, then consultation with the CFTC attorney is required to define and agree upon the requirements and applied technology.  Thereafter, all productions made to the CFTC should reference the established protocol.  Such methodologies may include, but are not limited to, the following criteria:

- Data Sources
- Custodians
- Date Range(s)
- Search Terms
- Deduplication
- Email Threading Usage
- Early Case Assessment (ECA) Usage
- Technology Assisted Review (TAR)
- Other Criteria, including alternative forms of analytics

## Delivery Formats

### I.   Native File Production

Requirements for the production of native document files are listed below.

1. **Emails**:  Emails and attachments must be produced as PST, NSF, DBX, MBOX, or MSG files. The file name must include the name of the email custodian.  When a production consists of multiple custodians, a separate PST (or similar file) should be produced for each custodian.

2. **Account Statements**:  Account statements must be produced in the same format in which they were originally created and distributed.

3. **Instant Messages (IMs)**:  IMs should be produced in .PST format or a delimited text file which must include, at a minimum, the following fields:
   1) DATE
   2) TIME



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

   3) FROM
   4) TO
   5) CONVERSATION_TEXT
   6) CONVERSATION_INDEX

Multiple conversations must be produced in a single file and a conversation index or similar unique string must be used to identify all threads of the same conversation. Field names must be included in the first row of the text file.

4. **Audio Files**:  Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™.  Types of audio files that will be accepted include:
   - Nice Systems audio files (.aud).  AUD files offer efficient compression and would be preferred over both NMF and WAV files.
   - Nice Systems audio files (.nmf).
   - WAV files
   - MP3, MP4
   - WMA
   - AIF

Produced audio files must be in a separate folder compared to other data in the production.

Additionally, the call information (metadata) related to each audio recording **must be produced if it exists**. The metadata must include, at a minimum, the following fields:
   1) CALLER_NAME or CALLER_ID:    Caller's name or identification number
   2) CALLING_NUMBER:    Caller's phone number
   3) FILENAME:    Filename of audio file
   4) DATE:    Date of call
   5) TIME:    Time of call
   6) CALLED_PARTY:    Name of the party called
   7) CALLED_NUMBER:    Called party's phone number

The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly. The metadata file must be produced in delimited text format. Field names must be included in the first row of the text file.  A sample .DAT file containing only a few fields for illustration purposes is depicted below:

```
Typeþ¶Audio_Trimmedþ¶þCALLER_IDþ¶þCUSTODIANþ¶þDATEþ¶þTIMEþ¶CALLED_NUMBERþ¶þ
þ07/09/2007  09:33:03þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ07/09/2007þ¶þ09:32:42þ¶þ¶
þ07/17/2007  09:17:36þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ07/17/2007þ¶þ09:17:24þ¶þ¶
þ10/12/2007  08:13:12þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ10/12/2007þ¶þ08:12:47þ¶þ¶
þ10/12/2007  08:18:51þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ10/12/2007þ¶þ08:18:19þ¶þ¶
þ12/05/2007  07:12:14þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ12/05/2007þ¶þ07:11:58þ¶þ¶
þ12/17/2007  08:40:17þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ12/17/2007þ¶þ08:40:09þ¶þ¶
þ12/31/2007  09:39:12þ¶þSpeakersþ¶þþ¶þDoe, Janeþ¶þ12/31/2007þ¶þ09:39:00þ¶þ¶
```

5. **Video Files**:  Video files must be produced in a format that is playable using Microsoft Windows Media Player™ along with any available metadata.  If it is known that the



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

video files do not contain associated audio, indicate this in the accompanying transmittal letter.  Types of video files accepted include:

- MPG
- AVI
- WMV
- MOV
- FLV

6. **Transcripts**:  Legal transcripts must be produced electronically in manuscript form with line numbers and page numbers. The preferred format is plain text (ASCII), although LiveNote and Summation formats are acceptable.

## II.   Imaged Collections

While the CFTC accepts imaged productions in addition to native formats, imaged productions without native formats are not permitted unless the original document only exists in hard copy form.   When images are produced, they must comply with the requirements below.

**\*\*\*The use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.\*\*\***

Note:  Adobe PDF files are **not** acceptable as imaged productions.  PDF files are acceptable only when the document content was initially created as a PDF (e.g., fillable PDF forms) and not converted from another format.

### 1.   Images

a.  Black and white images must be 300 DPI Group IV single-page TIFF files.
b.  Color images must be produced in JPEG format.
c.  File names cannot contain embedded spaces or special characters (including the comma).
d.  Folder names cannot contain embedded spaces or special characters (including the comma).
e.  All image files must have a unique file name.
f.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
g.  The number of TIFF files per folder should not exceed 500 files.
h.  TIFF images of Excel spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, should be used instead, and the native Excel file should be produced.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

2. **Concordance Image® Cross-Reference File**

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:

*ImageKey,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageKey*: | This is the unique designation that Concordance and Concordance Image and Relativity use to identify and retrieve an image. This value may be the same as the Bates number endorsed on each image. |
| *VolumeLabel:* | Leave this field empty. |
| *ImageFilePath:* | This is the full path to the image file on the produced storage media. |
| *DocumentBreak:* | This field is used to delineate the beginning of a new document. If this field contains the letter "Y," then this is the first page of a document. If this field is blank, then this page is not the first page of a document. |
| *FolderBreak:* | This field is used to delineate the beginning of a new folder in the same manner as the *DocumentBreak* field. If this information is not available, then it may be left empty. |
| *BoxBreak:* | This field is used to delineate the beginning of a new box in the same manner as the *DocumentBreak* and *FolderBreak* fields. If this information is not available, then it may be left empty. |
| *PageCount:* | Leave this field empty. |

Sample

```
LA-0000001,,E:\001\ LA-0000001.TIF,Y,,,
LA-0000002,,E:\001\ LA-0000002.TIF,,,,
LA-0000003,,E:\001\ LA-0000003.TIF,Y,,,
LA-0000004,,E:\001\ LA-0000004.TIF,,,,
LA-0000005,,E:\001\ LA-0000005.TIF,,,,
```

3. **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* or *Relativity®* database.

   a.  The first line of the .DAT file must be a header record identifying the field names.

   b.  The .DAT file must use the following *Concordance®* default delimiters:

| | | |
|---|---|---|
| Comma | | ASCII character 20 |
| Quote | þ | ASCII character 254 |
| Newline | ® | ASCII character 174 |

   c.  Date fields should be provided in the format: MM/DD/YYYY.



# CFTC Data Delivery Standards
### Effective: June 14, 2018

d. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

e. A TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the Begno.  Do not include the text in the .DAT file.

f. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.

g. BegAtt and EndAtt fields must be two separate fields.

h. DateSent and TimeSent fields must be two separate fields.

i. All text and metadata associated with the document collection must be produced.

Sample of .DAT file (only includes a sample of fields)

```
þBegnoþþBegAttachþþEndAttachþþFileDescripþþFilenameþþRecordTypeþ
þEML-0030437þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030438þþþþþþOutlook Data FileþþRE: Your Question.htmþþþ
þEML-0030439þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030440þþþþþþOutlook Data FileþþLook.htmþþE-MAILþþþ
þEML-0030441þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030442þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030443þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030444þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030445þþþþþþOutlook Data FileþþATTN.htmþþE-MAILþþþ
þEML-0030446þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030447þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030448þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
```

The metadata for the document collection should be provided in a .DAT file using the field definition and formatting described below:

| Field | Description | Field Type | Required |
|---|---|---|---|
| Begno | Displays the document identifier of the first page in a document or the entire document of an E-Doc. | Text | Yes |
| Endno | Page ID of the last page in a document (for image collections only). | Text | Yes for Image Collections |
| BegAttach | Displays the document identifier of a parent record. Must be separate from EndAttach field. | Text | If it Exists |
| EndAttach | Displays the document identifier of the last attached .document in a family. Must be separate from BegAttach field. | Text | If it Exists |
| PgCount | Number of pages in a document (for image | Text | Yes for Image |



# CFTC Data Delivery Standards

*Effective: June 14, 2018*

| Field | Description | Field Type | Required |
|---|---|---|---|
| | collections only). | | Collections |
| FileDescription | Description of a native file type. | Text | Yes |
| Filename | Original filename of a native file, | Text | Yes for Documents |
| RecordType | Displays the record type for each entry in the load file. | Text | Yes |
| ParentID | Displays the document identifier of the attachment record's parent (only for attachments). | Text | If it Exists |
| NumAttach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records. | Text | If it Exists |
| Attachmt | Populates parent records with document identifier of each attached record and is separated by semi-colons. | Text | If it Exists |
| Custodian | The owner of the record. | Text | Yes |
| From | Author of the e-mail message. | Text | Yes for email |
| To | Main recipient(s) of the e-mail message. | Text | Yes for email |
| CC | Recipient(s) of "Carbon Copies of the e-mail message. | Text | If it Exists |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | Text | If it Exists |
| EMail_Subject | Subject of the e-mail message. | Paragraph | Yes for email |
| DateSent | Sent date of an e-mail message.  Must be separate from TimeSent field. | MM/DD/YYYY | Yes for email |
| TimeSent | Time the e-mail message was sent. Must be separate from DateSent field. | Text | Yes for email |
| IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. | Text | If it Exists |
| ConversationIndex | This is a 44 character string of numbers and letters that is created in the initial email and which as 10 characters added for each reply or forward of an email. | Text | Yes for email |
| Conversation Family | E-mail thread identification.  Relational field for Conversion threads. | Text | Yes for email |
| EntryID | Unique identifier of e-mails in mail stores. | Text | If it Exists |
| Author | Author value pulled from metadata of the native file. | Text | If it Exists |
| Organization | Company extracted from metadata of the native file. | Text | If it Exists |
| Subject | Subject value extracted from metadata of the native file. | Paragraph | If it Exists |
| DateCreated | Creation date of the native file. | MM/DD/YYYY | If it Exists |
| DateLastMod | Date the native file was last modified. | MM/DD/YYYY | If it Exists |
| DateLastPrnt | Date the native file was last printed. | MM/DD/YYYY | If it Exists |
| MD5Hash | MD5 hash value. | Text | Yes |
| EDSource | Fully qualified original path to the source folder, files, and/or mail stores. | Text | Yes |



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

| Field | Description | Field Type | Required |
|---|---|---|---|
| NativeFile | Hyperlink to the native file. | Text | Yes |
| Textpath | Extracted text path. | Paragraph | Yes |
| Imagkey | Page ID of the first page of a document (for image collections only). Should be the same as the Begno field. | Paragraph | Yes |
| + Any other fields considered relevant by the producing party. | | | |

### 4. Text

Text must be produced as separate text files, not as fields within the .DAT file. If text is included in the .DAT file as a field, the production will be rejected. Extracted text must be in a separate folder, one text file per document. The files must be named the same as the Begno field. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names).

### 5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
    a. Native file documents must be named per the Begno field.
    b. The full path of the native file must be provided in the .DAT file for the NativeFile field.
    c. The number of native files per folder should not exceed 500 files.
    d. There should be no special characters (including commas in the folder names).

## III.   Productions of Adobe PDF Files

PDF files are not substitutions for native files, as metadata is lost when PDFing native files.  PDF productions that are produced as native productions will be rejected unless the files were originally created using Adobe (e.g., fillable electronic PDF forms) or prior agreement is reached with the designated CFTC attorney.  In those exceptions, PDF productions should adhere to the following guidelines:

1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document; **a PDF cannot contain multiple documents. PDF packages will be rejected.**
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

## IV.     Productions of Website Content

Website content must be produced in native format and viewable in common web browsers (e.g. Internet Explorer, Mozilla Firefox, and Google Chrome) without the use of any additional third party software. If the only existing state of a website is in source code form, the party must produce a fully compiled version of the website in addition to the website source code with documentation of the process used to render, compile, and/or restore the website to an easily viewable form.

## V.     Productions of Forensic Images of Computer Media

Forensic images must be produced in a common/standard format to include (E01, Ex01, L01, Lx01, AD1, Raw Bitstream, and S01). An inventory of any original computer media must be provided with the image files. All associated log files from any forensic acquisition must be produced with the image files. The log files must contain a hash value, at a minimum (MD5, SHA-1, or higher), for authentication purposes. A chain of custody document must be provided to ensure the integrity of any digital evidence.

## VI.     Productions of Forensically Acquired Mobile Device Data

Forensically acquired mobile device data must be provided in the original format of the software/hardware used to capture the data. All original logs and authentication reports must also be provided with the respective data.

## VII.     FTP (File Transfer Protocol) Submission

The preferred method for producing data is via FTP. The CFTC has an FTP site set up that will allow transfer of data up to 2 GB per transmission.

If you are interested in sending documents using FTP, email **eLaw-CPI@cftc.gov** and they will provide you with the Commission's FTP credentials upon request.  When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.



U.S. COMMODITY FUTURES TRADING COMMISSION
WASHINGTON, D.C. 20581

Statement to Persons Providing Information about Themselves to
the Commodity Futures Trading Commission

This document sets forth your legal rights and responsibilities as a person requested to supply information about yourself voluntarily, as a person with recordkeeping obligations under the Commodity Exchange Act or CFTC regulations, or as a person directed to provide sworn testimony or produce documents pursuant to a subpoena of the Commodity Futures Trading Commission ("Commission" or "CFTC").  When applicable, this statement also provides important information about the deposition process for persons providing testimony.  Unless stated otherwise, the information below applies whether you are providing information voluntarily, pursuant to the recordkeeping obligations of a registrant, or pursuant to subpoena.

<u>FALSE STATEMENTS AND DOCUMENTS</u>

Any person who knowingly and willfully makes false or fraudulent statements, whether under oath or otherwise, or falsifies, conceals or covers up a material fact, or submits any false writing or document, knowing it to contain false, fictitious or fraudulent information, is subject to the criminal penalties set forth in 18 U.S.C. § 1001, which include imprisonment of not more than five years, imposition of a substantial fine under the Federal Sentencing Guidelines, or both.

It shall also be unlawful for any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this Act, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading, as set forth in Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2).

<u>PRIVACY ACT</u>

To restrict unauthorized dissemination of personal information, the Privacy Act of 1974, 5 U.S.C. § 552a, limits an agency's ability to disclose such information.[1]  Under the Privacy Act, the Commission may disclose protected information as follows:  when the individual to whom the record pertains consents in writing; when officers and employees of the Commission need the record to perform their duties; when required by the terms of the Freedom of Information Act, 5 U.S.C. § 552; or when disclosure is for a "routine use" (i.e., one compatible with the purpose for which the information was collected).

---

[1]  Individuals should refer to the full text of the Privacy Act, 5 U.S.C. § 552a, to the Commission's Regulations, 17 C.F.R. § 146, and the CFTC's compilation of System of Record Notices, 76 Fed. Reg. 5974 (Feb. 2, 2011), for a complete list of authorized disclosures and coverage of the Act.  Only those disclosures arising most frequently are mentioned in this document.

Revised August 15, 2013



The Privacy Act also requires that, in certain situations, individuals requested to provide information about themselves receive notice of the following:

1.  AUTHORITY FOR SOLICITATION OF INFORMATION.

    a.  Recordkeeping for Registered Persons (other than Registered Swap Dealers and Major Swaps Participants).  Sections 4f, 4g and 4n of the Commodity Exchange Act, 7 U.S.C. §§ 6f, 6g, 6n, and Commission Regulations 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34, 1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7 and 33.7, 17 C.F.R. §§ 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34,1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7, 33.7, require Registered Persons other than Registered Swap Dealers and Major Swaps Participants to keep records and reports of transactions and positions in commodities for future delivery on any board of trade in the United States or elsewhere.  Registered Persons must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection by any representative of the Commission or the Department of Justice.

    b.  Recordkeeping for Members of a Registered Entity.  Commission Regulations 1.31, 1.35 and 1.37, 17 C.F.R. §§ 1.31, 1.35, 1.37, require Members of a Registered Entity to keep records and reports of transactions and positions in commodities for future delivery and options on any board of trade in the United States or elsewhere, as well as cash commodities.  Members of a Registered Entity must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection upon request by any representative of the Commission or the Department of Justice.  Commission Rule 1.40, 17 C.F.R. § 1.40, requires each Member of a Registered Entity to furnish to the Commission certain reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity.

    c.  Recordkeeping for Large Traders.  Section 4i of the Commodity Exchange Act, 7 U.S.C. § 6i, and Commission Regulations 1.31 and 18.05, 17 C.F.R. §§ 1.31, 18.05, require Large Traders to keep books and records showing, among other things, all details concerning all positions and transactions in the commodity, and in its products and by-products, whether executed through a contract for future delivery, an option contract or a cash contract, and whether such contract is executed through a board of trade, an exempt commercial market, an exempt board of trade, a foreign board of trade or an over-the-counter transaction.  All such books and records, and pertinent information concerning the underlying positions, transactions or activities, must be made available for inspection in a form acceptable to the Commission upon request by any representative of the Commission.

    d.  Recordkeeping for Registered Swap Dealers and Major Swaps Participants.  Sections 4r and 4s of the Commodity Exchange Act, 7 U.S.C. §§ 6r, 6s, and Commission Regulations 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, 46.2, require Swap Dealers ("SDs") and Major Swaps Participants ("MSPs") to keep records of all activities relating to their business with respect to swaps.  The records must be readily accessible throughout the life of the swap and for two years following its termination, and retrievable by the SD or MSP within three business days during the remainder of the retention period.  Each SD and MSP shall make available for

2



disclosure to and inspection by the Commission and its prudential regulator, as applicable, all information required by, or related to, the Commodity Exchange Act and Commission Regulations, including: (i) the terms and condition of its swaps; its swaps trading operations, mechanisms, and practices; financial integrity and risk management protections relating to swaps; and (iv) any other information relevant to its trading in swaps.  Such information shall be made available promptly, upon request, to Commission staff and the staff of the applicable prudential regulator, at such frequency and in such manner as is set forth in the Commodity Exchange Act, Commission regulations, or the regulations of the applicable prudential regulator.

e.  Recordkeeping by Swaps Participants who are not Registered.  Section 4r of the Commodity Exchange Act, 7 U.S.C. § 6r, and Commission Regulations 1.31, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 45.2, 46.2, require non-SD/MSP counterparties to keep records with respect to each swap in which they are a counterparty.  Required records must be kept by all swap counterparties throughout the existence of a swap and for five years following termination of the swap.  In the case of a non-SD/MSP counterparty, the records must be retrievable by the counterparty within five business days throughout the retention period.

f.  Investigations.  Sections 6(c) and 8(a) of the Commodity Exchange Act, 7 U.S.C. §§ 9, 12(a), and Commission Rule 11.2, 17 C.F.R. § 11.2, authorize the Commission to conduct investigations.  In the course of any investigation or proceeding, the Commission or an officer designated by the Commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require production of documents, and secure voluntary statements or submissions.

g.  Whistleblowers.  Section 23 of the Commodity Exchange Act, 7 U.S.C. § 26, and Commission Rule 165, 17 C.F.R. § 165, authorize the Commission to obtain information from persons seeking to participate in the Commission's whistleblower program. Commission staff may request information from prospective whistleblowers to determine whether a tip or complaint relates to a violation of the Commodity Exchange Act, to further an investigation into any such violation, and/or to determine whether the person submitting the information is eligible to participate in the program.  The Commission will not disclose information that could reasonably be expected to reveal the identity of a whistleblower, except under the circumstances described in Commission Rule 165.4, 17 C.F.R. § 165.4, and Section 23(h)(2) of the Commodity Exchange Act, 7 U.S.C. § 26(h)(2).

2.  <u>PURPOSE OF SOLICITATION OF INFORMATION</u>.  The Commission's principal purpose in soliciting information from you is to determine whether any person has violated, is violating, or is about to violate the Commodity Exchange Act or the rules and regulations thereunder. In certain circumstances, the Commission may be obtaining information at the behest of a foreign futures authority under Section 12(f) of the Commodity Exchange Act, 7 U.S.C. § 16(f).

3.  <u>EFFECT OF NOT SUPPLYING INFORMATION</u>.
    a.  Persons Directed to Provide Testimony or Produce Documents Pursuant to Subpoena. Disclosure of information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.  If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so.  If the Commission obtains such an order and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt.

3



b.  Persons Requested to Provide Information Voluntarily.  There are no direct effects or sanctions for failing to provide any or all of the requested information.  If you do provide information, however, you should note the sanctions for false statements and documents described above.

c.  Registered Persons.  Disclosure of requested books or records is mandatory pursuant to the provisions listed in paragraph 1.a. above.  Failure to submit or make available for inspection the requested information constitutes a violation of the Commodity Exchange Act and Commission Regulations and may result in any or all of the following under Sections 6(c), 6(d) or 6c of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13a-1, 15:

   1)  Institution of an action by the Commission to enjoin such a violation or enforce compliance;

   2)  Upon proper showing, granting of a temporary or permanent injunction or restraining order without bond;

   3)  Upon application by the Commission, issuance of writs of mandamus or orders offering like relief commanding compliance with the Commodity Exchange Act;

   4)  Imposition of a civil penalty of not more than the greater of $140,000 or such higher inflation adjusted amount as provided by Regulation 143.8, 17 C.F.R. §143.8 or triple the monetary gain to the person for each violation;

   5)  At the request of Commission, institution of an action by the Attorney General;

   6)  Prohibition of trading on, or subject to the rules of, a registered entity and require all registered entities to refuse the person all privileges;

   7)  Suspension or revocation of registration with the Commission;

   8)  Required payment of restitution to customers for damages proximately caused by violations;

   9)  Entry of a cease and desist order;

   10)  Imposition of a restraining order prohibiting you from destroying, altering or disposing of, or refusing to allow authorized representatives of the Commission to inspect, when and as requested, such books, records or other documents; and

   11)  Imposition of a restraining order prohibiting you from withdrawing, transferring, removing, dissipating or disposing of any funds, assets or other property.

d.  Whistleblowers.  Failure to provide information requested by Commission staff in relation to a whistleblower submission may affect your ability to receive a whistleblower award, or the potential amount of an award.

4.  <u>ROUTINE USES OF INFORMATION</u>.  The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate.  Whether or not the Commission makes its files available to

4



other governmental agencies is, in general, a confidential matter between the Commission and such other government agencies.  Information which you provide may be used in the routine operation of the Commission, which includes law enforcement, review of legislative and regulatory proposals, regulation of the commodity futures and swaps markets, and review of reports and documents filed with the Commission.

Specific routine uses include the following:[2]

a.  Information may be used by the Commission in any administrative proceeding before the Commission, in any injunctive action authorized under the Commodity Exchange Act, or in any other action or proceeding in which the Commission or its staff participates as a party or the Commission participates as amicus curiae.

b.  Information may be disclosed to the Department of Justice, the Securities and Exchange Commission, the United States Postal Service, the Internal Revenue Service, the Department of Agriculture, the Office of Personnel Management, and to other Federal, state, local, territorial or tribal law enforcement or regulatory agencies for use in meeting their statutory and regulatory requirements.

c.  Information may be given to any "registered entity," as defined in Section 1a of the Commodity Exchange Act, 7 U.S.C. § 1a, if the Commission has reason to believe that such information will assist the registered entity in carrying out its responsibilities under the Act.  Information may also be given to any registered futures association registered under Section 17 of the Commodity Exchange Act, 7 U.S.C. § 21, (e.g., the National Futures Association) to assist it in carrying out its self-regulatory responsibilities under the Act, and to any national securities exchange or national securities association registered with the Securities and Exchange Commission to assist those organizations in carrying out their self-regulatory responsibilities under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

d.  At the discretion of the Commission staff, information may be given or shown to anyone during the course of a Commission investigation if the staff has reason to believe that the person to whom it is disclosed may have further information about the matters discussed therein, and those matters appear relevant to the subject of the investigation.

e.  Information may be included in a public report issued by the Commission following an investigation, to the extent that this is authorized under section 8 of the Commodity Exchange Act, 7 U.S.C. § 12.  Section 8 authorizes publication of such reports but contains restrictions on the publication of certain types of sensitive business information developed during an investigation.  In certain contexts, some of this information might be considered personal in nature.

f.  Information may be disclosed to a Federal agency in response to its request in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract or the issuance of a license, or a grant or other benefit by the requesting agency, to the extent that the information may be relevant to the requesting agency's decision on the matter.

---

[2]  See CFTC compilation of System of Record Notices, including routine uses, at 76 Fed. Reg. 5974 (Feb. 2, 2011).

Revised August 15, 2013



g.  Information may be disclosed to a prospective employer in response to its request in connection with the hiring or retention of an employee, to the extent that the information is believed to be relevant to the prospective employer's decision in the matter.

h.  Information may be disclosed to any person, pursuant to Section 12(a) of the Commodity Exchange Act, 7 U.S.C. § 16(a), when disclosure will further the policies of that Act or of other provisions of law.  Section 12(a) authorizes the Commission to cooperate with various other government authorities or with "any person."

i.  Where information, either alone or in conjunction with other information indicates a violation or potential violation of law – criminal, civil or regulatory in nature – the relevant information may be disclosed to the appropriate Federal, state, local, territorial, tribal or foreign law enforcement authority or other appropriate entity charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

j.  Information may be disclosed to the General Services Administration, or the National Archives and Records Administration, for the purpose of records management inspections conducted under the authority of 44 U.S.C. §§ 2904 and 2906.

k.  Information may be disclosed to foreign law enforcement, investigatory or administrative authorities in order to comply with requirements set forth in international arrangements, such as memoranda of understanding.

l.  Information may be disclosed to contractors, grantees, volunteers, experts, students and others performing or working on a contract, service, grant, cooperative agreement or job for the Federal government when necessary to accomplish an agency function.

m. Information may be disclosed to the Merit Systems Protection Board, including the Office of Special Counsel, for the purpose of litigation, including administrative proceedings, appeals, special studies of the civil service and other merit systems.

n.  Information may be disclosed to the Department of Justice or in a proceeding before a court, adjudicative body or other administrative body which the agency is authorized to appear, when:

   i.   the agency, or any component thereof; or

   ii.  any employee of the agency in his or her official capacity; or

   iii. any employee of the agency in his or her official capacity where the Department of Justice or the agency has agreed to represent the employee; or

   iv.  the United States, when the agency determines that litigation is likely to affect the agency or any of its components;

is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation; provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

6



o.  Information may be disclosed to a Member of Congress or staff acting upon the Member's behalf when the Member or staff requests the information on behalf of, or at the request of, the individual who is the subject of the record.

p.  Information related to any traders or the amount or quantity of any commodity purchased or sold by such traders may be disclosed to any committee of either House of Congress upon its request, acting within the scope of its jurisdiction, pursuant to the Commodity Exchange Act, including Section 8(e) of such Act, 7 U.S.C. § 12(e), and the rules and regulations promulgated thereunder.

q.  Information may be disclosed to another Federal agency, to a court or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

Revised August 15, 2013



r.  Information may be disclosed to appropriate agencies, entities and individuals when:

    i.  the Commission suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised;

    ii.  the Commission has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the Commission or another agency or entity) that rely upon the compromised information; and

    iii.  the disclosure made to such agencies, entities, and individuals is reasonably necessary to assist in connection with the Commission's efforts to respond to the suspected or confirmed compromise and prevent, minimize or remedy such harm.

<u>FREEDOM OF INFORMATION ACT</u>

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Commission's rules and regulations pursuant thereto, 17 C.F.R. § 145, generally provide for disclosure of information to the public, unless information falls within a specified exemption.  Commission Rule 145.9, 17 C.F.R. § 145.9, establishes the procedure by which you may request that certain sensitive information not be disclosed pursuant to a FOIA request.

INFORMAL PROCEDURE RELATING TO THE
<u>RECOMMENDATION OF ENFORCEMENT PROCEEDINGS</u>

As a result of facts gathered in an investigation, the Division of Enforcement may decide to propose an enforcement action against one or more individuals.  Under the Informal Procedure Relating to the Recommendation of Enforcement Proceedings,[3] the Division of Enforcement, in its discretion, may inform persons to be named in such actions of the nature of the allegations pertaining to them. The Division may also, in its discretion, advise such persons that they may submit a written statement before the consideration by the Commission of any staff recommendation for the commencement of the proceeding.  Unless otherwise provided, such written statements must be submitted within 14 days after persons are informed by the Division of Enforcement of the nature of pertaining to the allegations pertaining to them.

<u>SMALL BUSINESS REGULATORY AND ENFORCEMENT FAIRNESS ACT</u>

Your comments are important.  If you wish to comment on the enforcement or regulatory actions of the Commodity Futures Trading Commission, please call the Small Business Liaison in the Office of General Counsel at (202) 418-5120.  You may also wish to contact the Small Business and Agriculture Regulatory Enforcement Ombudsman, or one of the 10 Regional Fairness Boards, which were established by the Small Business Regulatory and Enforcement Fairness Act.  The Ombudsman and Boards receive comments from small businesses about Federal agency enforcement actions.  The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business.  If you wish to contact the Ombudsman to comment on the enforcement actions of the CFTC, please call 1-888-REG-FAIR (1-888-734-3247).

---

[3]  The Informal Procedure has been adopted as Appendix A to Part 11 of the Commission's Regulations, 17 C.F.R. § 11, Appendix A.  Appendix A more fully sets forth the substantive and procedural provisions of the Informal Procedure.

Revised August 15, 2013

**EXHIBIT F**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1ZA4796A0195061252

**Weight**

0.00 LBS

**Service**

UPS Next Day Air®

**Shipped / Billed On**

01/14/2020

**Delivered On**

01/15/2020 9:55 A.M.

**Delivered To**

WILMINGTON, DE, US

**Received By**

HIGGINS

**Left At**

Receiver

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 01/15/2020 10:03 A.M. EST

**EXHIBIT G**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

**Hunt, Brian**

---

| | |
|---|---|
| **From:** | Hunt, Brian |
| **Sent:** | Wednesday, January 29, 2020 8:51 AM |
| **To:** | Robert Higgins |
| **Cc:** | Solinsky, Michael W.; Loconte, Michael |
| **Subject:** | RE: [EXTERNAL] RE: CFTC Subpoena |

Mr. Higgins,

We have not heard from counsel.  Have you retained anyone?  If so, please have them reach out to us ASAP.

Thank you,
Brian

**Brian A. Hunt** | Trial Attorney
Division of Enforcement | U.S. Commodity Futures Trading Commission
1155 21st St NW | Washington, DC 20581
(202) 418-5095 | bhunt@cftc.gov

**From:** Robert Higgins [mailto:RHiggins@theargentgroup.com]
**Sent:** Thursday, January 16, 2020 1:11 PM
**To:** Hunt, Brian
**Cc:** Solinsky, Michael W.
**Subject:** [EXTERNAL] RE: CFTC Subpoena

Thank you Brian

I will be back in DE tomorrow and will review and respond

Robert Higgins

**From:** Hunt, Brian [mailto:BHunt@CFTC.gov]
**Sent:** Wednesday, January 15, 2020 10:27 AM
**To:** rhiggins@theargentgroup.com
**Cc:** Solinsky, Michael W. <msolinsky@CFTC.gov>
**Subject:** CFTC Subpoena

Mr. Higgins:

Please see the attached courtesy copy of a subpoena sent to Argent Asset Group via UPS.

Best regards,
Brian

**Brian A. Hunt** | Trial Attorney
Division of Enforcement | U.S. Commodity Futures Trading Commission
1155 21st St NW | Washington, DC 20581
(202) 418-5095 | bhunt@cftc.gov

# EXHIBIT H

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

**Hunt, Brian**

**From:** Robert Higgins <RHiggins@theargentgroup.com>
**Sent:** Wednesday, January 29, 2020 1:34 PM
**To:** Hunt, Brian
**Subject:** [EXTERNAL]


Brian



I have been in Contact with David Slovick                                                 and he is reviewing the paper
work we received and promises to get back to me asap and then contact you.


Just wanting to keep you up to speed



*Robert L Higgins*                    **Ask Me About Any of The Following**
                                     *The First & Only IRA Approved Rare Coin Fund*
*Co-Managing Member*          *The Maximus Silver Program*
*Chief Numismatist*               *Dealer Preffered IRA Bullion Program*
*Rare Coin Fund Manager*     *Argent Numismatic Secured Program*


302-765-3352 Office Main Number
610-308-6856 International Cell 24/7

Corporate Headquarters
Argent Asset Group LLC
100 Todds Lane
Wilmington, DE 19802

rhiggins@theargentgroup.com
www.argentpreciousmetals.com

# EXHIBIT I

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

**Hunt, Brian**

---

| | |
|---|---|
| **From:** | Slovick, David <DSlovick@btlaw.com> |
| **Sent:** | Tuesday, April 14, 2020 11:32 AM |
| **To:** | Hunt, Brian |
| **Subject:** | [EXTERNAL] In re West Hills Capital |

Brian:

As we discussed, please feel free to reach out to Mr. Higgins regarding the status of documents collection at Argent and First State. Please contact me if I can be of assistance.

Best,

David

**David Slovick** | Partner
Barnes & Thornburg LLP
445 Park Avenue, Suite 700
New York, NY 10022
Direct: (646) 746-2019 | Mobile: (773) 680-5711



CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product
privilege by the transmission of this message.

**EXHIBIT J**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

## Hunt, Brian

| | |
|---|---|
| **From:** | Hunt, Brian |
| **Sent:** | Wednesday, April 15, 2020 8:50 AM |
| **To:** | 'Robert Higgins' |
| **Cc:** | 'Slovick, David'; Solinsky, Michael W.; Loconte, Michael |
| **Subject:** | CFTC Subpoenas |

Mr. Higgins:

I hope all is well with you and your family.  Your counsel, David Slovick, has specifically authorized the CFTC in writing to reach out to you regarding the status of document collection at Argent and First State in response to the CFTC's subpoenas.  I understand that Mr. Slovick has been unable to reach you regarding document collection efforts.  Please contact him before Monday, April 20, to discuss whether and when you intend to comply with the subpoenas so that the CFTC can determine whether to file a subpoena enforcement action in federal court.

Best,
Brian



**Brian A. Hunt**
Trial Attorney, Division of Enforcement
**Commodity Futures Trading Commission**
202-418-5095
bhunt@cftc.gov

**EXHIBIT K**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

BRIAN A. HUNT
TRIAL ATTORNEY
(202) 418-5095
bhunt@cftc.gov

July 29, 2020

**By UPS & Email**
Argent Asset Group, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

Argent Asset Group, LLC
100 Todds Lane
Wilmington, DE 19802-3212
c/o David Slovick, Esq.
DSlovick@btlaw.com

To Whom It May Concern:

Pursuant to Sections 6(c) and 8(a) of the Commodity Exchange Act, as amended, 7 U.S.C. §§ 9 and 12(a), and Section 11.4 of the Commodity Futures Trading Commission's Regulations, 17 C.F.R. § 11.4, enclosed is a true and complete copy of an administrative subpoena commanding that you produce by **5:00 p.m. on August 14, 2020** certain documents and other materials to the Commission, as set forth in Schedule A to the subpoena.

Complete instructions for complying with the subpoena may be found in the subpoena and its attachments. Also attached please find a copy of the Commission's *Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission*, which sets forth information explaining certain rights and obligations of witnesses and uses of information submitted to the Commission.

The Division requires that you produce all electronic documents in native file format in accordance with the attached *CFTC Data Delivery Standards*. **Due to limitations on in-office staff at the Commission's headquarters in Washington, DC, the Division asks that the documents be sent electronically via file transfer protocol ("FTP").** Please email **eLaw-CPI@cftc.gov** to obtain credentials to send the documents via the Commission's secure FTP. You will receive a response with the Commission's FTP credentials. When sending documents via FTP, you MUST include the matter number (A9137), the Commission point of contact (Brian A. Hunt), and a cover letter. The cover letter should state whether your response is complete. If your response is not complete, the cover letter should explain any deficiencies.

If you have any questions regarding this subpoena, please do not hesitate to contact me at (202) 418-5095 or Michael Solinsky at (202) 418-5384.

Sincerely,

Brian A. Hunt
Trial Attorney

Enclosures:
1. Subpoena
2. Instructions, Definitions, and Schedule A to Subpoena
3. CFTC Data Delivery Standards
4. Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

# SUBPOENA
## *DUCES TECUM*

**TO:**   Argent Asset Group, LLC
100 Todds Lane
Wilmington, DE 19802-3212

Argent Asset Group, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

**YOU ARE HEREBY COMMANDED** to produce all books, papers, correspondence, memoranda, records, or other tangible things specified in the attached **Schedule A** in connection with an investigation by the Commodity Futures Trading Commission ("Commission") in the matter of:

### West Hills Capital LLC and Joseph Unger

These materials are to be **delivered via FTP** to the attention of Brian A. Hunt on or before **August 14, 2020, at 5:00 p.m.**, in accordance with the instructions attached to this subpoena. You may contact **eLaw-CPI@cftc.gov** to obtain instructions for secure file transfer protocol (FTP).

**\*\*FAILURE TO COMPLY WITH THIS SUBPOENA MAY RESULT IN THE COMMENCEMENT OF A LEGAL ACTION IN A UNITED STATES DISTRICT COURT TO COMPEL COMPLIANCE WITH THE REQUIREMENTS HEREOF\*\***

Issued this 29th day of July, 2020, at Washington, DC by:

*/s/Brian A. Hunt*
Brian A. Hunt
Designated Officer
Commodity Futures Trading Commission

CFTC Form 10 (6-83)

**RETURN OF SERVICE**

In the case of a natural person:

[ ]    handing it to the person named herein.

[ ]    leaving it at the person's office with the person in charge, namely:

[ ]    leaving it at the person's office in a conspicuous place, to wit:

[ ]    leaving it at the person's usual place of abode, namely:

[ ]    mailing by UPS NEXT DAY AIR to the following address:

[ ]    another method by which actual notice is given, to wit:

**In the case of service upon other than a natural person:**

[ ]    handing it to a registered agent for service or other officer, director or agent in charge of such office, namely (name & title):

[X]    mailing by UPS NEXT DAY AIR to such agent or representative, namely (name, title & address):

Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

[X]    another method by which actual notice is given, to wit:

Emailing to:

David Slovick, Esq.
Barnes & Thornburg LLP
DSlovick@btlaw.com
*Counsel to Argent Asset Group, LLC*

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I caused this subpoena to be served in accordance with the method noted above.*

Dated:  July 29, 2020

_____
Erica N. Bodin

# INSTRUCTIONS AND DEFINITIONS FOR SUBPOENA *DUCES TECUM* ISSUED TO ARGENT ASSET GROUP, LLC

This Subpoena expressly incorporates the definitions and instructions included in the Subpoena issued to Argent Asset Group, LLC by the Enforcement Division on January 14, 2020.

## NOTICE CONCERNING DOCUMENT DESTRUCTION

Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or object, in an official proceeding; or (D) be absent from an official proceeding to which such person has been summoned by legal process; or (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than ten years, or both.  18 U.S.C. § 1512(b).

# SCHEDULE A

# DOCUMENTS TO BE PRODUCED BY
# ARGENT ASSET GROUP, LLC

*The foregoing definitions and instructions are expressly incorporated into each specific request for production as if fully stated therein.  For the Subpoena Period, unless otherwise described, you are required to produce the following documents in your possession, custody, or control:*

1.  All transcripts of trial or deposition testimony given by Argent[1] in any civil or criminal matters, and all exhibits thereto, including but not limited to:

    a.   All testimony by Robert Higgins, Eric Higgins, Steven Higgins, Ryan Higgins, Vicki Lott Reid, Donald Ketterling, and others in *Israeli Discount Bank of New York v. First State Depository Company, LLC, et al.*, Del. Ch. Ct. Civ. Action No 7237-VCP;

    b.   All testimony given by Argent in connection with any investigation conducted by any law enforcement agency, foreign or domestic;

2.  For the period December 31, 2013 to present, all monthly records reflecting the physical inventory of precious metal, bullion, coins, currency, or other tangible assets held or stored at Argent's offices.

---

[1] As noted in the definitions to the subpoena dated January 14, 2020, Argent is defined to include "any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations."  For the purposes of this Subpoena, the Division considers Certified Assets Management, Inc. and Certified Assets Management International to be covered by the foregoing definition of Argent.



# CFTC Data Delivery Standards

## Effective:  June 14, 2018

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).  Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).

**\*\*Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.\*\***

## Contents

General Instructions ........................................................................................................................ 2

Electronic Discovery Protocols ...................................................................................................... 3

Delivery Formats ............................................................................................................................ 3

    I.    Native File Production .......................................................................................................... 3

        1.    Emails ............................................................................................................................ 3

        2.    Account Statements ....................................................................................................... 3

        3.    Instant Messages (IMs) .................................................................................................. 3

        4.    Audio Files .................................................................................................................... 4

        5.    Video Files .................................................................................................................... 4

        6.    Transcripts .................................................................................................................... 5

    II.    Imaged Collections .............................................................................................................. 5

        1.    Images ........................................................................................................................... 5

        2.    Concordance Image® Cross-Reference File ................................................................ 6

        3.    Data File ....................................................................................................................... 6

        4.    Text ............................................................................................................................... 9

        5.    Linked Native Files ...................................................................................................... 9

    III.    Productions of Adobe PDF Files ......................................................................................... 9

    IV.    Productions of Website Content ......................................................................................... 10

    V.    Productions of Forensic Images of Computer Media ........................................................ 10

    VI.    Productions of Forensically Acquired Mobile Device Data ............................................. 10

    VII.    FTP (File Transfer Protocol) Submission ....................................................................... 10



# CFTC Data Delivery Standards
### Effective:  June 14, 2018

## General Instructions

Please send documents via overnight mail **(**1155 21st Street NW, Mailstop CPI, Washington, DC, 20581) or use the Commission's secure file transfer protocol ("FTP"); **do <u>not</u> produce any documents via the U.S. Postal Service**.  If you are interested in sending documents using FTP, email **eLaw-CPI@cftc.gov** and they will provide you with the Commission's FTP credentials upon request.  When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.

(Note:  An Adobe PDF file is **<u>not</u>** considered a native file unless the document was initially created as a PDF.)

In the event produced files require the use of proprietary software not commonly found in the workplace, the CFTC will explore other format options with the producing party.

In regards to imaged collections, the use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.

General requirements for <u>ALL</u> document productions are:

1. **<u>Production of data via email is unacceptable.</u>**
2. Reference the specific portion of the request to which you are responding, along with a summary of the number of files in the production, so that we can confirm everything is loaded into our review system.
3. All native file submissions must be organized **by custodian** unless otherwise instructed.
4. All load-ready collections should include only one data load file and one image pointer file.
5. All load-ready text must be produced as separate text files, not as fields within the .DAT file.
6. All load-ready collections should account for custodians in the custodian field.
7. Audio files should be separated from data files if both are included in the production.
8. The preferred method of submission is via File Transfer Protocol (FTP). (See details in Section IV on page 10.)
9. Large productions (any production above 10 GB) must be submitted to the CFTC on media such as a CD, DVD, thumb drive, or hard drive. The media must be clearly marked with the following:
    a. Matter name
    b. Producing party
    c. Production date
    d. Disk number (1 of X), if applicable
10. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**.  Special characters are not permitted. Any data received with file names or folders with special characters, including the comma, will be rejected.  The combined length of the file path with folder and file name should not exceed 255 characters.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

11. Include information within the cover letter regarding the time zone used, if emails or other electronic files were standardized during conversion.
12. If you want the submitted material returned at the conclusion of the investigation you must indicate that preference in writing when the material is produced, **and** the media on which it is provided **must** be encrypted.
13. All production data containing sensitive or personally identifiable information must be encrypted using FIPS 140 compliant software.
14. <u>Provide passwords for all password-protected files or hardware in a separate transmittal.</u>
15. All productions should be checked and produced free of computer viruses and malware. Productions containing viruses or malware may not be accepted and will require a new production.
16. If the production is created using Relativity, Duplicate Spare = No must not be applied.

## Electronic Discovery Protocols

If a producing party wants to employ winnowing techniques to reduce the volume of production material, then consultation with the CFTC attorney is required to define and agree upon the requirements and applied technology. Thereafter, all productions made to the CFTC should reference the established protocol. Such methodologies may include, but are not limited to, the following criteria:

- Data Sources
- Custodians
- Date Range(s)
- Search Terms
- Deduplication
- Email Threading Usage
- Early Case Assessment (ECA) Usage
- Technology Assisted Review (TAR)
- Other Criteria, including alternative forms of analytics

## Delivery Formats

### I. Native File Production

Requirements for the production of native document files are listed below.

1. **Emails**: Emails and attachments must be produced as PST, NSF, DBX, MBOX, or MSG files. The file name must include the name of the email custodian. When a production consists of multiple custodians, a separate PST (or similar file) should be produced for each custodian.
2. **Account Statements**: Account statements must be produced in the same format in which they were originally created and distributed.
3. **Instant Messages (IMs)**: IMs should be produced in .PST format or a delimited text file which must include, at a minimum, the following fields:
   1) DATE
   2) TIME



# CFTC Data Delivery Standards
### Effective: June 14, 2018

    3) FROM
    4) TO
    5) CONVERSATION_TEXT
    6) CONVERSATION_INDEX

Multiple conversations must be produced in a single file and a conversation index or similar unique string must be used to identify all threads of the same conversation. Field names must be included in the first row of the text file.

4. **Audio Files**:  Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™.  Types of audio files that will be accepted include:
   - Nice Systems audio files (.aud).  AUD files offer efficient compression and would be preferred over both NMF and WAV files.
   - Nice Systems audio files (.nmf).
   - WAV files
   - MP3, MP4
   - WMA
   - AIF

   Produced audio files must be in a separate folder compared to other data in the production.

   Additionally, the call information (metadata) related to each audio recording **must be produced if it exists**. The metadata must include, at a minimum, the following fields:
   1) CALLER_NAME or CALLER_ID:    Caller's name or identification number
   2) CALLING_NUMBER:    Caller's phone number
   3) FILENAME:    Filename of audio file
   4) DATE:    Date of call
   5) TIME:    Time of call
   6) CALLED_PARTY:    Name of the party called
   7) CALLED_NUMBER:    Called party's phone number

   The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly. The metadata file must be produced in delimited text format. Field names must be included in the first row of the text file.  A sample .DAT file containing only a few fields for illustration purposes is depicted below:

   ```
   þTypeþþÞAudio_Trimmedþþ þCALLER_IDþþ þCUSTODIANþþ þDATEþþ þTIMEþþ þCALLED_NUMBERþþ þ
   þ07/09/2007 09:33:03þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ07/09/2007þþ þ09:32:42þþ þþ þ
   þ07/17/2007 09:17:36þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ07/17/2007þþ þ09:17:24þþ þþ þ
   þ10/12/2007 08:13:12þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ10/12/2007þþ þ08:12:47þþ þþ þ
   þ10/12/2007 08:18:51þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ10/12/2007þþ þ08:18:19þþ þþ þ
   þ12/05/2007 07:12:14þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ12/05/2007þþ þ07:11:58þþ þþ þ
   þ12/17/2007 08:40:17þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ12/17/2007þþ þ08:40:09þþ þþ þ
   þ12/31/2007 09:39:12þþ þSpeakersþþ þþ þþ þDoe, Janeþþ þ12/31/2007þþ þ09:39:00þþ þþ þ
   ```

5. **Video Files**:  Video files must be produced in a format that is playable using Microsoft Windows Media Player™ along with any available metadata.  If it is known that the



# CFTC Data Delivery Standards
### Effective:  June 14, 2018

video files do not contain associated audio, indicate this in the accompanying transmittal letter.  Types of video files accepted include:

- MPG
- AVI
- WMV
- MOV
- FLV

6. **Transcripts**:  Legal transcripts must be produced electronically in manuscript form with line numbers and page numbers. The preferred format is plain text (ASCII), although LiveNote and Summation formats are acceptable.

## II.   Imaged Collections

While the CFTC accepts imaged productions in addition to native formats, imaged productions without native formats are not permitted unless the original document only exists in hard copy form.   When images are produced, they must comply with the requirements below.

**\*\*\*The use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.\*\*\***

Note:  Adobe PDF files are **not** acceptable as imaged productions.  PDF files are acceptable only when the document content was initially created as a PDF (e.g., fillable PDF forms) and not converted from another format.

### 1.   Images

a. Black and white images must be 300 DPI Group IV single-page TIFF files.
b. Color images must be produced in JPEG format.
c. File names cannot contain embedded spaces or special characters (including the comma).
d. Folder names cannot contain embedded spaces or special characters (including the comma).
e. All image files must have a unique file name.
f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
g. The number of TIFF files per folder should not exceed 500 files.
h. TIFF images of Excel spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, should be used instead, and the native Excel file should be produced.



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

**2.   Concordance Image® Cross-Reference File**

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:

*ImageKey,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageKey*: | This is the unique designation that Concordance and Concordance Image and Relativity use to identify and retrieve an image. This value may be the same as the Bates number endorsed on each image. |
| *VolumeLabel:* | Leave this field empty. |
| *ImageFilePath:* | This is the full path to the image file on the produced storage media. |
| *DocumentBreak:* | This field is used to delineate the beginning of a new document.  If this field contains the letter "Y," then this is the first page of a document.  If this field is blank, then this page is not the first page of a document. |
| *FolderBreak:* | This field is used to delineate the beginning of a new folder in the same manner as the *DocumentBreak* field.  If this information is not available, then it may be left empty. |
| *BoxBreak:* | This field is used to delineate the beginning of a new box in the same manner as the *DocumentBreak* and *FolderBreak* fields.  If this information is not available, then it may be left empty. |
| *PageCount:* | Leave this field empty. |

Sample

```
LA-0000001,,E:\001\ LA-0000001.TIF,Y,,,
LA-0000002,,E:\001\ LA-0000002.TIF,,,,
LA-0000003,,E:\001\ LA-0000003.TIF,Y,,,
LA-0000004,,E:\001\ LA-0000004.TIF,,,,
LA-0000005,,E:\001\ LA-0000005.TIF,,,,
```

**3.   Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* or *Relativity®* database.

a.   The first line of the .DAT file must be a header record identifying the field names.

b.   The .DAT file must use the following *Concordance®* default delimiters:

| | | |
|---|---|---|
| Comma | | ASCII character 20 |
| Quote | þ | ASCII character 254 |
| Newline | ® | ASCII character 174 |

c.   Date fields should be provided in the format: MM/DD/YYYY.



# CFTC Data Delivery Standards
### Effective: June 14, 2018

d. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

e. A TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the Begno.  Do not include the text in the .DAT file.

f. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.

g. BegAtt and EndAtt fields must be two separate fields.

h. DateSent and TimeSent fields must be two separate fields.

i. All text and metadata associated with the document collection must be produced.

Sample of .DAT file (only includes a sample of fields)

```
þBegnoþþBegAttachþþEndAttachþþFileDescripþþFilenameþþRecordTypeþ
þEML-0030437þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030438þþþþþþOutlook Data FileþþRE: Your Question.htmþþþ
þEML-0030439þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030440þþþþþþOutlook Data FileþþLook.htmþþE-MAILþþþ
þEML-0030441þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030442þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030443þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030444þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030445þþþþþþOutlook Data FileþþATTN.htmþþE-MAILþþþ
þEML-0030446þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030447þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030448þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
```

The metadata for the document collection should be provided in a .DAT file using the field definition and formatting described below:

| Field | Description | Field Type | Required |
|---|---|---|---|
| Begno | Displays the document identifier of the first page in a document or the entire document of an E-Doc. | Text | Yes |
| Endno | Page ID of the last page in a document (for image collections only). | Text | Yes for Image Collections |
| BegAttach | Displays the document identifier of a parent record. Must be separate from EndAttach field. | Text | If it Exists |
| EndAttach | Displays the document identifier of the last attached .document in a family. Must be separate from BegAttach field. | Text | If it Exists |
| PgCount | Number of pages in a document (for image | Text | Yes for Image |



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

| Field | Description | Field Type | Required |
|---|---|---|---|
| | collections only). | | Collections |
| FileDescription | Description of a native file type. | Text | Yes |
| Filename | Original filename of a native file, | Text | Yes for Documents |
| RecordType | Displays the record type for each entry in the load file. | Text | Yes |
| ParentID | Displays the document identifier of the attachment record's parent (only for attachments). | Text | If it Exists |
| NumAttach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records. | Text | If it Exists |
| Attachmt | Populates parent records with document identifier of each attached record and is separated by semi-colons. | Text | If it Exists |
| Custodian | The owner of the record. | Text | Yes |
| From | Author of the e-mail message. | Text | Yes for email |
| To | Main recipient(s) of the e-mail message. | Text | Yes for email |
| CC | Recipient(s) of "Carbon Copies of the e-mail message. | Text | If it Exists |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | Text | If it Exists |
| EMail_Subject | Subject of the e-mail message. | Paragraph | Yes for email |
| DateSent | Sent date of an e-mail message.  Must be separate from TimeSent field. | MM/DD/YYYY | Yes for email |
| TimeSent | Time the e-mail message was sent. Must be separate from DateSent field. | Text | Yes for email |
| IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. | Text | If it Exists |
| ConversationIndex | This is a 44 character string of numbers and letters that is created in the initial email and which as 10 characters added for each reply or forward of an email. | Text | Yes for email |
| Conversation Family | E-mail thread identification.  Relational field for Conversion threads. | Text | Yes for email |
| EntryID | Unique identifier of e-mails in mail stores. | Text | If it Exists |
| Author | Author value pulled from metadata of the native file. | Text | If it Exists |
| Organization | Company extracted from metadata of the native file. | Text | If it Exists |
| Subject | Subject value extracted from metadata of the native file. | Paragraph | If it Exists |
| DateCreated | Creation date of the native file. | MM/DD/YYYY | If it Exists |
| DateLastMod | Date the native file was last modified. | MM/DD/YYYY | If it Exists |
| DateLastPrnt | Date the native file was last printed. | MM/DD/YYYY | If it Exists |
| MD5Hash | MD5 hash value. | Text | Yes |
| EDSource | Fully qualified original path to the source folder, files, and/or mail stores. | Text | Yes |



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

| Field | Description | Field Type | Required |
|---|---|---|---|
| NativeFile | Hyperlink to the native file. | Text | Yes |
| Textpath | Extracted text path. | Paragraph | Yes |
| Imagkey | Page ID of the first page of a document (for image collections only). Should be the same as the Begno field. | Paragraph | Yes |
| + Any other fields considered relevant by the producing party. | | | |

### 4. Text

Text must be produced as separate text files, not as fields within the .DAT file. If text is included in the .DAT file as a field, the production will be rejected. Extracted text must be in a separate folder, one text file per document. The files must be named the same as the Begno field. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names).

### 5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
    a. Native file documents must be named per the Begno field.
    b. The full path of the native file must be provided in the .DAT file for the NativeFile field.
    c. The number of native files per folder should not exceed 500 files.
    d. There should be no special characters (including commas in the folder names).

## III. Productions of Adobe PDF Files

PDF files are not substitutions for native files, as metadata is lost when PDFing native files. PDF productions that are produced as native productions will be rejected unless the files were originally created using Adobe (e.g., fillable electronic PDF forms) or prior agreement is reached with the designated CFTC attorney. In those exceptions, PDF productions should adhere to the following guidelines:

1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document; **a PDF cannot contain multiple documents. PDF packages will be rejected.**
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

## IV.   Productions of Website Content

Website content must be produced in native format and viewable in common web browsers (e.g. Internet Explorer, Mozilla Firefox, and Google Chrome) without the use of any additional third party software. If the only existing state of a website is in source code form, the party must produce a fully compiled version of the website in addition to the website source code with documentation of the process used to render, compile, and/or restore the website to an easily viewable form.

## V.   Productions of Forensic Images of Computer Media

Forensic images must be produced in a common/standard format to include (E01, Ex01, L01, Lx01, AD1, Raw Bitstream, and S01). An inventory of any original computer media must be provided with the image files. All associated log files from any forensic acquisition must be produced with the image files. The log files must contain a hash value, at a minimum (MD5, SHA-1, or higher), for authentication purposes. A chain of custody document must be provided to ensure the integrity of any digital evidence.

## VI.   Productions of Forensically Acquired Mobile Device Data

Forensically acquired mobile device data must be provided in the original format of the software/hardware used to capture the data. All original logs and authentication reports must also be provided with the respective data.

## VII.   FTP (File Transfer Protocol) Submission

The preferred method for producing data is via FTP. The CFTC has an FTP site set up that will allow transfer of data up to 2 GB per transmission.

If you are interested in sending documents using FTP, email **eLaw-CPI@cftc.gov** and they will provide you with the Commission's FTP credentials upon request.  When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.



**U.S. COMMODITY FUTURES TRADING COMMISSION**
**WASHINGTON, D.C. 20581**

Statement to Persons Providing Information about Themselves to
the Commodity Futures Trading Commission

This document sets forth your legal rights and responsibilities as a person requested to supply information about yourself voluntarily, as a person with recordkeeping obligations under the Commodity Exchange Act or CFTC regulations, or as a person directed to provide sworn testimony or produce documents pursuant to a subpoena of the Commodity Futures Trading Commission ("Commission" or "CFTC"). When applicable, this statement also provides important information about the deposition process for persons providing testimony. Unless stated otherwise, the information below applies whether you are providing information voluntarily, pursuant to the recordkeeping obligations of a registrant, or pursuant to subpoena.

<u>FALSE STATEMENTS AND DOCUMENTS</u>

Any person who knowingly and willfully makes false or fraudulent statements, whether under oath or otherwise, or falsifies, conceals or covers up a material fact, or submits any false writing or document, knowing it to contain false, fictitious or fraudulent information, is subject to the criminal penalties set forth in 18 U.S.C. § 1001, which include imprisonment of not more than five years, imposition of a substantial fine under the Federal Sentencing Guidelines, or both.

It shall also be unlawful for any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this Act, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading, as set forth in Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2).

<u>PRIVACY ACT</u>

To restrict unauthorized dissemination of personal information, the Privacy Act of 1974, 5 U.S.C. § 552a, limits an agency's ability to disclose such information.[1] Under the Privacy Act, the Commission may disclose protected information as follows: when the individual to whom the record pertains consents in writing; when officers and employees of the Commission need the record to perform their duties; when required by the terms of the Freedom of Information Act, 5 U.S.C. § 552; or when disclosure is for a "routine use" (i.e., one compatible with the purpose for which the information was collected).

---

[1] Individuals should refer to the full text of the Privacy Act, 5 U.S.C. § 552a, to the Commission's Regulations, 17 C.F.R. § 146, and the CFTC's compilation of System of Record Notices, 76 Fed. Reg. 5974 (Feb. 2, 2011), for a complete list of authorized disclosures and coverage of the Act. Only those disclosures arising most frequently are mentioned in this document.

Revised August 15, 2013



The Privacy Act also requires that, in certain situations, individuals requested to provide information about themselves receive notice of the following:

1. <u>AUTHORITY FOR SOLICITATION OF INFORMATION</u>.

    a. Recordkeeping for Registered Persons (other than Registered Swap Dealers and Major Swaps Participants). Sections 4f, 4g and 4n of the Commodity Exchange Act, 7 U.S.C. §§ 6f, 6g, 6n, and Commission Regulations 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34, 1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7 and 33.7, 17 C.F.R. §§ 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34,1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7, 33.7, require Registered Persons other than Registered Swap Dealers and Major Swaps Participants to keep records and reports of transactions and positions in commodities for future delivery on any board of trade in the United States or elsewhere. Registered Persons must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission. All such books and records must be made available for inspection by any representative of the Commission or the Department of Justice.

    b. Recordkeeping for Members of a Registered Entity. Commission Regulations 1.31, 1.35 and 1.37, 17 C.F.R. §§ 1.31, 1.35, 1.37, require Members of a Registered Entity to keep records and reports of transactions and positions in commodities for future delivery and options on any board of trade in the United States or elsewhere, as well as cash commodities. Members of a Registered Entity must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission. All such books and records must be made available for inspection upon request by any representative of the Commission or the Department of Justice. Commission Rule 1.40, 17 C.F.R. § 1.40, requires each Member of a Registered Entity to furnish to the Commission certain reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity.

    c. Recordkeeping for Large Traders. Section 4i of the Commodity Exchange Act, 7 U.S.C. § 6i, and Commission Regulations 1.31 and 18.05, 17 C.F.R. §§ 1.31, 18.05, require Large Traders to keep books and records showing, among other things, all details concerning all positions and transactions in the commodity, and in its products and by-products, whether executed through a contract for future delivery, an option contract or a cash contract, and whether such contract is executed through a board of trade, an exempt commercial market, an exempt board of trade, a foreign board of trade or an over-the-counter transaction. All such books and records, and pertinent information concerning the underlying positions, transactions or activities, must be made available for inspection in a form acceptable to the Commission upon request by any representative of the Commission.

    d. Recordkeeping for Registered Swap Dealers and Major Swaps Participants. Sections 4r and 4s of the Commodity Exchange Act, 7 U.S.C. §§ 6r, 6s, and Commission Regulations 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, 46.2, require Swap Dealers ("SDs") and Major Swaps Participants ("MSPs") to keep records of all activities relating to their business with respect to swaps. The records must be readily accessible throughout the life of the swap and for two years following its termination, and retrievable by the SD or MSP within three business days during the remainder of the retention period. Each SD and MSP shall make available for



disclosure to and inspection by the Commission and its prudential regulator, as applicable, all information required by, or related to, the Commodity Exchange Act and Commission Regulations, including: (i) the terms and condition of its swaps; its swaps trading operations, mechanisms, and practices; financial integrity and risk management protections relating to swaps; and (iv) any other information relevant to its trading in swaps.  Such information shall be made available promptly, upon request, to Commission staff and the staff of the applicable prudential regulator, at such frequency and in such manner as is set forth in the Commodity Exchange Act, Commission regulations, or the regulations of the applicable prudential regulator.

e.  Recordkeeping by Swaps Participants who are not Registered.  Section 4r of the Commodity Exchange Act, 7 U.S.C. § 6r, and Commission Regulations 1.31, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 45.2, 46.2, require non-SD/MSP counterparties to keep records with respect to each swap in which they are a counterparty.  Required records must be kept by all swap counterparties throughout the existence of a swap and for five years following termination of the swap.  In the case of a non-SD/MSP counterparty, the records must be retrievable by the counterparty within five business days throughout the retention period.

f.  Investigations.  Sections 6(c) and 8(a) of the Commodity Exchange Act, 7 U.S.C. §§ 9, 12(a), and Commission Rule 11.2, 17 C.F.R. § 11.2, authorize the Commission to conduct investigations.  In the course of any investigation or proceeding, the Commission or an officer designated by the Commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require production of documents, and secure voluntary statements or submissions.

g.  Whistleblowers.  Section 23 of the Commodity Exchange Act, 7 U.S.C. § 26, and Commission Rule 165, 17 C.F.R. § 165, authorize the Commission to obtain information from persons seeking to participate in the Commission's whistleblower program.  Commission staff may request information from prospective whistleblowers to determine whether a tip or complaint relates to a violation of the Commodity Exchange Act, to further an investigation into any such violation, and/or to determine whether the person submitting the information is eligible to participate in the program.  The Commission will not disclose information that could reasonably be expected to reveal the identity of a whistleblower, except under the circumstances described in Commission Rule 165.4, 17 C.F.R. § 165.4, and Section 23(h)(2) of the Commodity Exchange Act, 7 U.S.C. § 26(h)(2).

2.  <u>PURPOSE OF SOLICITATION OF INFORMATION</u>.  The Commission's principal purpose in soliciting information from you is to determine whether any person has violated, is violating, or is about to violate the Commodity Exchange Act or the rules and regulations thereunder.  In certain circumstances, the Commission may be obtaining information at the behest of a foreign futures authority under Section 12(f) of the Commodity Exchange Act, 7 U.S.C. § 16(f).

3.  <u>EFFECT OF NOT SUPPLYING INFORMATION</u>.
    a.  Persons Directed to Provide Testimony or Produce Documents Pursuant to Subpoena.  Disclosure of information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.  If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so.  If the Commission obtains such an order and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt.

3



b.   Persons Requested to Provide Information Voluntarily.  There are no direct effects or sanctions for failing to provide any or all of the requested information.  If you do provide information, however, you should note the sanctions for false statements and documents described above.

c.   Registered Persons.  Disclosure of requested books or records is mandatory pursuant to the provisions listed in paragraph 1.a. above.  Failure to submit or make available for inspection the requested information constitutes a violation of the Commodity Exchange Act and Commission Regulations and may result in any or all of the following under Sections 6(c), 6(d) or 6c of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13a-1, 15:

   1)   Institution of an action by the Commission to enjoin such a violation or enforce compliance;

   2)   Upon proper showing, granting of a temporary or permanent injunction or restraining order without bond;

   3)   Upon application by the Commission, issuance of writs of mandamus or orders offering like relief commanding compliance with the Commodity Exchange Act;

   4)   Imposition of a civil penalty of not more than the greater of $140,000 or such higher inflation adjusted amount as provided by Regulation 143.8, 17 C.F.R. §143.8 or triple the monetary gain to the person for each violation;

   5)   At the request of Commission, institution of an action by the Attorney General;

   6)   Prohibition of trading on, or subject to the rules of, a registered entity and require all registered entities to refuse the person all privileges;

   7)   Suspension or revocation of registration with the Commission;

   8)   Required payment of restitution to customers for damages proximately caused by violations;

   9)   Entry of a cease and desist order;

   10)  Imposition of a restraining order prohibiting you from destroying, altering or disposing of, or refusing to allow authorized representatives of the Commission to inspect, when and as requested, such books, records or other documents; and

   11)  Imposition of a restraining order prohibiting you from withdrawing, transferring, removing, dissipating or disposing of any funds, assets or other property.

d.   Whistleblowers.  Failure to provide information requested by Commission staff in relation to a whistleblower submission may affect your ability to receive a whistleblower award, or the potential amount of an award.

4.   ROUTINE USES OF INFORMATION.  The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors.  There is a likelihood that information supplied by you will be made available to such agencies where appropriate.  Whether or not the Commission makes its files available to

4



other governmental agencies is, in general, a confidential matter between the Commission and such other government agencies.  Information which you provide may be used in the routine operation of the Commission, which includes law enforcement, review of legislative and regulatory proposals, regulation of the commodity futures and swaps markets, and review of reports and documents filed with the Commission.

Specific routine uses include the following:[2]

a.  Information may be used by the Commission in any administrative proceeding before the Commission, in any injunctive action authorized under the Commodity Exchange Act, or in any other action or proceeding in which the Commission or its staff participates as a party or the Commission participates as amicus curiae.

b.  Information may be disclosed to the Department of Justice, the Securities and Exchange Commission, the United States Postal Service, the Internal Revenue Service, the Department of Agriculture, the Office of Personnel Management, and to other Federal, state, local, territorial or tribal law enforcement or regulatory agencies for use in meeting their statutory and regulatory requirements.

c.  Information may be given to any "registered entity," as defined in Section 1a of the Commodity Exchange Act, 7 U.S.C. § 1a, if the Commission has reason to believe that such information will assist the registered entity in carrying out its responsibilities under the Act.  Information may also be given to any registered futures association registered under Section 17 of the Commodity Exchange Act, 7 U.S.C. § 21, (e.g., the National Futures Association) to assist it in carrying out its self-regulatory responsibilities under the Act, and to any national securities exchange or national securities association registered with the Securities and Exchange Commission to assist those organizations in carrying out their self-regulatory responsibilities under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

d.  At the discretion of the Commission staff, information may be given or shown to anyone during the course of a Commission investigation if the staff has reason to believe that the person to whom it is disclosed may have further information about the matters discussed therein, and those matters appear relevant to the subject of the investigation.

e.  Information may be included in a public report issued by the Commission following an investigation, to the extent that this is authorized under section 8 of the Commodity Exchange Act, 7 U.S.C. § 12.  Section 8 authorizes publication of such reports but contains restrictions on the publication of certain types of sensitive business information developed during an investigation.  In certain contexts, some of this information might be considered personal in nature.

f.  Information may be disclosed to a Federal agency in response to its request in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract or the issuance of a license, or a grant or other benefit by the requesting agency, to the extent that the information may be relevant to the requesting agency's decision on the matter.

---

[2]  See CFTC compilation of System of Record Notices, including routine uses, at 76 Fed. Reg. 5974 (Feb. 2, 2011).

Revised August 15, 2013



g. Information may be disclosed to a prospective employer in response to its request in connection with the hiring or retention of an employee, to the extent that the information is believed to be relevant to the prospective employer's decision in the matter.

h. Information may be disclosed to any person, pursuant to Section 12(a) of the Commodity Exchange Act, 7 U.S.C. § 16(a), when disclosure will further the policies of that Act or of other provisions of law.  Section 12(a) authorizes the Commission to cooperate with various other government authorities or with "any person."

i. Where information, either alone or in conjunction with other information indicates a violation or potential violation of law – criminal, civil or regulatory in nature – the relevant information may be disclosed to the appropriate Federal, state, local, territorial, tribal or foreign law enforcement authority or other appropriate entity charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

j. Information may be disclosed to the General Services Administration, or the National Archives and Records Administration, for the purpose of records management inspections conducted under the authority of 44 U.S.C. §§ 2904 and 2906.

k. Information may be disclosed to foreign law enforcement, investigatory or administrative authorities in order to comply with requirements set forth in international arrangements, such as memoranda of understanding.

l. Information may be disclosed to contractors, grantees, volunteers, experts, students and others performing or working on a contract, service, grant, cooperative agreement or job for the Federal government when necessary to accomplish an agency function.

m. Information may be disclosed to the Merit Systems Protection Board, including the Office of Special Counsel, for the purpose of litigation, including administrative proceedings, appeals, special studies of the civil service and other merit systems.

n. Information may be disclosed to the Department of Justice or in a proceeding before a court, adjudicative body or other administrative body which the agency is authorized to appear, when:

    i. the agency, or any component thereof; or

    ii. any employee of the agency in his or her official capacity; or

    iii. any employee of the agency in his or her official capacity where the Department of Justice or the agency has agreed to represent the employee; or

    iv. the United States, when the agency determines that litigation is likely to affect the agency or any of its components;

is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation; provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

6



o.  Information may be disclosed to a Member of Congress or staff acting upon the Member's behalf when the Member or staff requests the information on behalf of, or at the request of, the individual who is the subject of the record.

p.  Information related to any traders or the amount or quantity of any commodity purchased or sold by such traders may be disclosed to any committee of either House of Congress upon its request, acting within the scope of its jurisdiction, pursuant to the Commodity Exchange Act, including Section 8(e) of such Act, 7 U.S.C. § 12(e), and the rules and regulations promulgated thereunder.

q.  Information may be disclosed to another Federal agency, to a court or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

Revised August 15, 2013



    r.  Information may be disclosed to appropriate agencies, entities and individuals when:

        i.  the Commission suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised;

        ii.  the Commission has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the Commission or another agency or entity) that rely upon the compromised information; and

        iii.  the disclosure made to such agencies, entities, and individuals is reasonably necessary to assist in connection with the Commission's efforts to respond to the suspected or confirmed compromise and prevent, minimize or remedy such harm.

## FREEDOM OF INFORMATION ACT

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Commission's rules and regulations pursuant thereto, 17 C.F.R. § 145, generally provide for disclosure of information to the public, unless information falls within a specified exemption.  Commission Rule 145.9, 17 C.F.R. § 145.9, establishes the procedure by which you may request that certain sensitive information not be disclosed pursuant to a FOIA request.

## INFORMAL PROCEDURE RELATING TO THE
## RECOMMENDATION OF ENFORCEMENT PROCEEDINGS

As a result of facts gathered in an investigation, the Division of Enforcement may decide to propose an enforcement action against one or more individuals.  Under the Informal Procedure Relating to the Recommendation of Enforcement Proceedings,[3] the Division of Enforcement, in its discretion, may inform persons to be named in such actions of the nature of the allegations pertaining to them. The Division may also, in its discretion, advise such persons that they may submit a written statement before the consideration by the Commission of any staff recommendation for the commencement of the proceeding.  Unless otherwise provided, such written statements must be submitted within 14 days after persons are informed by the Division of Enforcement of the nature of pertaining to the allegations pertaining to them.

## SMALL BUSINESS REGULATORY AND ENFORCEMENT FAIRNESS ACT

Your comments are important.  If you wish to comment on the enforcement or regulatory actions of the Commodity Futures Trading Commission, please call the Small Business Liaison in the Office of General Counsel at (202) 418-5120.  You may also wish to contact the Small Business and Agriculture Regulatory Enforcement Ombudsman, or one of the 10 Regional Fairness Boards, which were established by the Small Business Regulatory and Enforcement Fairness Act.  The Ombudsman and Boards receive comments from small businesses about Federal agency enforcement actions.  The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business.  If you wish to contact the Ombudsman to comment on the enforcement actions of the CFTC, please call 1-888-REG-FAIR (1-888-734-3247).

---

[3]  The Informal Procedure has been adopted as Appendix A to Part 11 of the Commission's Regulations, 17 C.F.R. § 11, Appendix A.  Appendix A more fully sets forth the substantive and procedural provisions of the Informal Procedure.

Revised August 15, 2013

**EXHIBIT L**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

BRIAN A. HUNT
TRIAL ATTORNEY
(202) 418-5095
bhunt@cftc.gov

July 29, 2020

**By UPS & Email**
First State Depository Company, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

First State Depository Company, LLC
100 Todds Lane
Wilmington, DE 19802-3212
c/o David Slovick, Esq.
DSlovick@btlaw.com

To Whom It May Concern:

Pursuant to Sections 6(c) and 8(a) of the Commodity Exchange Act, as amended, 7 U.S.C. §§ 9 and 12(a), and Section 11.4 of the Commodity Futures Trading Commission's Regulations, 17 C.F.R. § 11.4, enclosed is a true and complete copy of an administrative subpoena commanding that you produce by **5:00 p.m. on August 14, 2020** certain documents and other materials to the Commission, as set forth in Schedule A to the subpoena.

Complete instructions for complying with the subpoena may be found in the subpoena and its attachments.  Also attached please find a copy of the Commission's *Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission*, which sets forth information explaining certain rights and obligations of witnesses and uses of information submitted to the Commission.

The Division requires that you produce all electronic documents in native file format in accordance with the attached *CFTC Data Delivery Standards*.  **Due to limitations on in-office staff at the Commission's headquarters in Washington, DC, the Division asks that the documents be sent electronically via file transfer protocol ("FTP").**  Please email **eLaw-CPI@cftc.gov** to obtain credentials to send the documents via the Commission's secure FTP. You will receive a response with the Commission's FTP credentials.  When sending documents via FTP, you MUST include the matter number (A9137), the Commission point of contact (Brian A. Hunt), and a cover letter. The cover letter should state whether your response is complete.  If your response is not complete, the cover letter should explain any deficiencies.

If you have any questions regarding this subpoena, please do not hesitate to contact me at (202) 418-5095 or Michael Solinsky at (202) 418-5384.

Sincerely,

Brian A. Hunt
Trial Attorney

Enclosures:
1. Subpoena
2. Instructions, Definitions, and Schedule A to Subpoena
3. CFTC Data Delivery Standards
4. Statement to Persons Directed to Provide Information About Themselves to the Commodity Futures Trading Commission



**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521

Division of
Enforcement

# SUBPOENA
# *DUCES TECUM*

**TO:**   First State Depository Company, LLC
100 Todds Lane
Wilmington, DE 19802-3212

First State Depository Company, LLC
c/o Registered Agents Legal Services, LLC
1013 Centre Road Suite 403S
Wilmington, DE 19805-1270

**YOU ARE HEREBY COMMANDED** to produce all books, papers, correspondence, memoranda, records, or other tangible things specified in the attached **Schedule A** in connection with an investigation by the Commodity Futures Trading Commission ("Commission") in the matter of:

### West Hills Capital LLC and Joseph Unger

These materials are to be **delivered via FTP** to the attention of Brian A. Hunt on or before **August 14, 2020, at 5:00 p.m.**, in accordance with the instructions attached to this subpoena. You may contact **eLaw-CPI@cftc.gov** to obtain instructions for secure file transfer protocol (FTP).

**\*\*FAILURE TO COMPLY WITH THIS SUBPOENA MAY RESULT IN THE COMMENCEMENT OF A LEGAL ACTION IN A UNITED STATES DISTRICT COURT TO COMPEL COMPLIANCE WITH THE REQUIREMENTS HEREOF\*\***

Issued this 29th day of July, 2020, at Washington, DC by:

*/s/Brian A. Hunt*
Brian A. Hunt
Designated Officer
Commodity Futures Trading Commission

CFTC Form 10 (6-83)

**RETURN OF SERVICE**

In the case of a natural person:

    [ ]    handing it to the person named herein.

    [ ]    leaving it at the person's office with the person in charge, namely:

    [ ]    leaving it at the person's office in a conspicuous place, to wit:

    [ ]    leaving it at the person's usual place of abode, namely:

    [ ]    mailing by UPS NEXT DAY AIR to the following address:

    [ ]    another method by which actual notice is given, to wit:

**In the case of service upon other than a natural person:**

    [ ]    handing it to a registered agent for service or other officer, director or agent in charge of such office, namely (name & title):

    [X]    mailing by UPS NEXT DAY AIR to such agent or representative, namely (name, title & address):

        Registered Agents Legal Services, LLC
        1013 Centre Road Suite 403S
        Wilmington, DE 19805-1270

    [X]    another method by which actual notice is given, to wit:

    Emailing to:

        David Slovick, Esq.
        Barnes & Thornburg LLP
        DSlovick@btlaw.com
        *Counsel to First State Depository Company, LLC*

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I caused this subpoena to be served in accordance with the method noted above.*

Dated:  July 29, 2020

                                         Erica N. Bodin

# INSTRUCTIONS AND DEFINITIONS FOR
# SUBPOENA *DUCES TECUM* ISSUED TO
# FIRST STATE DEPOSITORY COMPANY, LLC

This Subpoena expressly incorporates the definitions and instructions included in the Subpoena issued to First State Depository Company, LLC by the Enforcement Division on November 19, 2019.  The following additional definition is expressly incorporated into each specific demand for production in Schedule A as if fully stated therein:

1. **"Subpoena Period"** means December 31, 2011 through the present.

### NOTICE CONCERNING DOCUMENT DESTRUCTION

Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or object, in an official proceeding; or (D) be absent from an official proceeding to which such person has been summoned by legal process; or (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than ten years, or both.  18 U.S.C. § 1512(b).

# SCHEDULE A

# DOCUMENTS TO BE PRODUCED BY
# FIRST STATE DEPOSITORY COMPANY, LLC

*The foregoing definitions and instructions are expressly incorporated into each specific request for production as if fully stated therein. For the Subpoena Period, unless otherwise described, you are required to produce the following documents in your possession, custody, or control:*

1.  All transcripts of trial or deposition testimony given by First State Depository[1] in any civil or criminal matters, and all exhibits thereto, including but not limited to:

    a.  All testimony by Robert Higgins, Eric Higgins, Steven Higgins, Ryan Higgins, Vicki Lott Reid, Donald Ketterling, and others in *Israeli Discount Bank of New York v. First State Depository Company, LLC, et al.*, Del. Ch. Ct. Civ. Action No 7237-VCP;

    b.  All testimony given by First State Depository in connection with any investigation conducted by any law enforcement agency, foreign or domestic;

2.  For the period December 31, 2013 to present, all monthly records reflecting the physical inventory of precious metal, bullion, coins, currency, or other tangible assets held or stored at First State Depository's offices.

---

[1] As noted in the definitions to the subpoena dated November 19, 2019, First State Depository is defined to include "any and all of its directors, principals, officers, partners, members, consultants, agents, employees, representatives, receivers, transferees, beneficiaries, assigns, attorneys, attorneys-in-fact, and accountants, and any and all of its affiliates, successors in interest, related corporations, partnerships, proprietorships, associations, or organizations." For the purposes of this Subpoena, the Division considers Certified Assets Management, Inc. and Certified Assets Management International to be covered by the foregoing definition of First State Depository.



# CFTC Data Delivery Standards

## Effective:  June 14, 2018

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).  Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.



# CFTC Data Delivery Standards
*Effective:  June 14, 2018*

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).

**\*\*Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.\*\***

## Contents

General Instructions ............................................................................................................... 2

Electronic Discovery Protocols ................................................................................................ 3

Delivery Formats ....................................................................................................................... 3

    I.    Native File Production ..................................................................................................... 3

        1.    Emails ................................................................................................................... 3

        2.    Account Statements ............................................................................................ 3

        3.    Instant Messages (IMs) ...................................................................................... 3

        4.    Audio Files .......................................................................................................... 4

        5.    Video Files ........................................................................................................... 4

        6.    Transcripts .......................................................................................................... 5

    II.    Imaged Collections ......................................................................................................... 5

        1.    Images .................................................................................................................. 5

        2.    Concordance Image® Cross-Reference File .................................................... 6

        3.    Data File .............................................................................................................. 6

        4.    Text ...................................................................................................................... 9

        5.    Linked Native Files ............................................................................................ 9

    III.    Productions of Adobe PDF Files .................................................................................... 9

    IV.    Productions of Website Content ................................................................................... 10

    V.    Productions of Forensic Images of Computer Media .................................................. 10

    VI.    Productions of Forensically Acquired Mobile Device Data ....................................... 10

    VII.    FTP (File Transfer Protocol) Submission .................................................................... 10



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

## General Instructions

Please send documents via overnight mail **(**1155 21st Street NW, Mailstop CPI, Washington, DC, 20581) or use the Commission's secure file transfer protocol ("FTP"); **do <u>not</u> produce any documents via the U.S. Postal Service.** If you are interested in sending documents using FTP, email **eLaw-CPI@cftc.gov** and they will provide you with the Commission's FTP credentials upon request. When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.

(Note: An Adobe PDF file is **<u>not</u>** considered a native file unless the document was initially created as a PDF.)

In the event produced files require the use of proprietary software not commonly found in the workplace, the CFTC will explore other format options with the producing party.

In regards to imaged collections, the use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.

General requirements for <u>ALL</u> document productions are:

1. **<u>Production of data via email is unacceptable.</u>**
2. Reference the specific portion of the request to which you are responding, along with a summary of the number of files in the production, so that we can confirm everything is loaded into our review system.
3. All native file submissions must be organized **by custodian** unless otherwise instructed.
4. All load-ready collections should include only one data load file and one image pointer file.
5. All load-ready text must be produced as separate text files, not as fields within the .DAT file.
6. All load-ready collections should account for custodians in the custodian field.
7. Audio files should be separated from data files if both are included in the production.
8. The preferred method of submission is via File Transfer Protocol (FTP). (See details in Section IV on page 10.)
9. Large productions (any production above 10 GB) must be submitted to the CFTC on media such as a CD, DVD, thumb drive, or hard drive. The media must be clearly marked with the following:
   a. Matter name
   b. Producing party
   c. Production date
   d. Disk number (1 of X), if applicable
10. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted. Any data received with file names or folders with special characters, including the comma, will be rejected. The combined length of the file path with folder and file name should not exceed 255 characters.



# CFTC Data Delivery Standards
### Effective: June 14, 2018

11. Include information within the cover letter regarding the time zone used, if emails or other electronic files were standardized during conversion.

12. If you want the submitted material returned at the conclusion of the investigation you must indicate that preference in writing when the material is produced, **and** the media on which it is provided **must** be encrypted.

13. All production data containing sensitive or personally identifiable information must be encrypted using FIPS 140 compliant software.

14. <u>Provide passwords for all password-protected files or hardware in a separate transmittal.</u>

15. All productions should be checked and produced free of computer viruses and malware. Productions containing viruses or malware may not be accepted and will require a new production.

16. If the production is created using Relativity, Duplicate Spare = No must not be applied.

## Electronic Discovery Protocols

If a producing party wants to employ winnowing techniques to reduce the volume of production material, then consultation with the CFTC attorney is required to define and agree upon the requirements and applied technology.  Thereafter, all productions made to the CFTC should reference the established protocol.  Such methodologies may include, but are not limited to, the following criteria:

- Data Sources
- Custodians
- Date Range(s)
- Search Terms
- Deduplication
- Email Threading Usage
- Early Case Assessment (ECA) Usage
- Technology Assisted Review (TAR)
- Other Criteria, including alternative forms of analytics

## Delivery Formats

### I.   Native File Production

Requirements for the production of native document files are listed below.

1. **Emails**:  Emails and attachments must be produced as PST, NSF, DBX, MBOX, or MSG files. The file name must include the name of the email custodian.  When a production consists of multiple custodians, a separate PST (or similar file) should be produced for each custodian.

2. **Account Statements**:  Account statements must be produced in the same format in which they were originally created and distributed.

3. **Instant Messages (IMs)**:  IMs should be produced in .PST format or a delimited text file which must include, at a minimum, the following fields:
   1) DATE
   2) TIME



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

     3) FROM
     4) TO
     5) CONVERSATION_TEXT
     6) CONVERSATION_INDEX

Multiple conversations must be produced in a single file and a conversation index or similar unique string must be used to identify all threads of the same conversation. Field names must be included in the first row of the text file.

4. **Audio Files**:  Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™.  Types of audio files that will be accepted include:
   - Nice Systems audio files (.aud).  AUD files offer efficient compression and would be preferred over both NMF and WAV files.
   - Nice Systems audio files (.nmf).
   - WAV files
   - MP3, MP4
   - WMA
   - AIF

Produced audio files must be in a separate folder compared to other data in the production.

Additionally, the call information (metadata) related to each audio recording **must be produced if it exists**. The metadata must include, at a minimum, the following fields:
   1) CALLER_NAME or CALLER_ID:    Caller's name or identification number
   2) CALLING_NUMBER:    Caller's phone number
   3) FILENAME:    Filename of audio file
   4) DATE:    Date of call
   5) TIME:    Time of call
   6) CALLED_PARTY:    Name of the party called
   7) CALLED_NUMBER:    Called party's phone number

The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly. The metadata file must be produced in delimited text format. Field names must be included in the first row of the text file.  A sample .DAT file containing only a few fields for illustration purposes is depicted below:

```
þTypeþþþAudio_TrimmedþþþþCALLER_IDþþþCUSTODIANþþþDATEþþþTIMEþþþCALLED_NUMBERþþþ
þ07/09/2007  09:33:03þþþSpeakersþþþþþþþDoe, Janeþþþ07/09/2007þþþ09:32:42þþþþþ
þ07/17/2007  09:17:36þþþSpeakersþþþþþþþDoe, Janeþþþ07/17/2007þþþ09:17:24þþþþþ
þ10/12/2007  08:13:12þþþSpeakersþþþþþþþDoe, Janeþþþ10/12/2007þþþ08:12:47þþþþþ
þ10/12/2007  08:18:51þþþSpeakersþþþþþþþDoe, Janeþþþ10/12/2007þþþ08:18:19þþþþþ
þ12/05/2007  07:12:14þþþSpeakersþþþþþþþDoe, Janeþþþ12/05/2007þþþ07:11:58þþþþþ
þ12/17/2007  08:40:17þþþSpeakersþþþþþþþDoe, Janeþþþ12/17/2007þþþ08:40:09þþþþþ
þ12/31/2007  09:39:12þþþSpeakersþþþþþþþDoe, Janeþþþ12/31/2007þþþ09:39:00þþþþþ
```

5. **Video Files**:  Video files must be produced in a format that is playable using Microsoft Windows Media Player™ along with any available metadata.  If it is known that the



# CFTC Data Delivery Standards
*Effective:  June 14, 2018*

video files do not contain associated audio, indicate this in the accompanying transmittal letter.  Types of video files accepted include:

- MPG
- AVI
- WMV
- MOV
- FLV

6.  **Transcripts**:  Legal transcripts must be produced electronically in manuscript form with line numbers and page numbers. The preferred format is plain text (ASCII), although LiveNote and Summation formats are acceptable.

## II.  Imaged Collections

While the CFTC accepts imaged productions in addition to native formats, imaged productions without native formats are not permitted unless the original document only exists in hard copy form.   When images are produced, they must comply with the requirements below.

**\*\*\*The use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.\*\*\***

Note:  Adobe PDF files are **not** acceptable as imaged productions.  PDF files are acceptable only when the document content was initially created as a PDF (e.g., fillable PDF forms) and not converted from another format.

### 1.  Images

a.  Black and white images must be 300 DPI Group IV single-page TIFF files.
b.  Color images must be produced in JPEG format.
c.  File names cannot contain embedded spaces or special characters (including the comma).
d.  Folder names cannot contain embedded spaces or special characters (including the comma).
e.  All image files must have a unique file name.
f.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
g.  The number of TIFF files per folder should not exceed 500 files.
h.  TIFF images of Excel spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, should be used instead, and the native Excel file should be produced.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

2. **Concordance Image® Cross-Reference File**

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:

*ImageKey,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageKey*: | This is the unique designation that Concordance and Concordance Image and Relativity use to identify and retrieve an image. This value may be the same as the Bates number endorsed on each image. |
| *VolumeLabel:* | Leave this field empty. |
| *ImageFilePath:* | This is the full path to the image file on the produced storage media. |
| *DocumentBreak:* | This field is used to delineate the beginning of a new document.  If this field contains the letter "Y," then this is the first page of a document.  If this field is blank, then this page is not the first page of a document. |
| *FolderBreak:* | This field is used to delineate the beginning of a new folder in the same manner as the *DocumentBreak* field.  If this information is not available, then it may be left empty. |
| *BoxBreak:* | This field is used to delineate the beginning of a new box in the same manner as the *DocumentBreak* and *FolderBreak* fields.  If this information is not available, then it may be left empty. |
| *PageCount:* | Leave this field empty. |
| Sample | LA-0000001,,E:\001\ LA-0000001.TIF,Y,,,<br>LA-0000002,,E:\001\ LA-0000002.TIF,,,,<br>LA-0000003,,E:\001\ LA-0000003.TIF,Y,,,<br>LA-0000004,,E:\001\ LA-0000004.TIF,,,,<br>LA-0000005,,E:\001\ LA-0000005.TIF,,,, |

3. **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* or *Relativity®* database.
   a. The first line of the .DAT file must be a header record identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:

| | | |
|---|---|---|
| Comma | | ASCII character 20 |
| Quote | þ | ASCII character 254 |
| Newline | ® | ASCII character 174 |

   c. Date fields should be provided in the format: MM/DD/YYYY.



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

d. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

e. A TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the Begno.  Do not include the text in the .DAT file.

f. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.

g. BegAtt and EndAtt fields must be two separate fields.

h. DateSent and TimeSent fields must be two separate fields.

i. All text and metadata associated with the document collection must be produced.

Sample of .DAT file (only includes a sample of fields)

```
þBegnoþþBegAttachþþEndAttachþþFileDescripþþFilenameþþRecordTypeþ
þEML-0030437þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030438þþþþþþOutlook Data FileþþRE: Your Question.htmþþþ
þEML-0030439þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030440þþþþþþOutlook Data FileþþLook.htmþþE-MAILþþþ
þEML-0030441þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030442þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030443þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030444þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030445þþþþþþOutlook Data FileþþATTN.htmþþE-MAILþþþ
þEML-0030446þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030447þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030448þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
```

The metadata for the document collection should be provided in a .DAT file using the field definition and formatting described below:

| Field | Description | Field Type | Required |
|---|---|---|---|
| Begno | Displays the document identifier of the first page in a document or the entire document of an E-Doc. | Text | Yes |
| Endno | Page ID of the last page in a document (for image collections only). | Text | Yes for Image Collections |
| BegAttach | Displays the document identifier of a parent record. Must be separate from EndAttach field. | Text | If it Exists |
| EndAttach | Displays the document identifier of the last attached .document in a family. Must be separate from BegAttach field. | Text | If it Exists |
| PgCount | Number of pages in a document (for image | Text | Yes for Image |



# CFTC Data Delivery Standards
### Effective:  June 14, 2018

| Field | Description | Field Type | Required |
|-------|-------------|------------|----------|
| | collections only). | | Collections |
| FileDescription | Description of a native file type. | Text | Yes |
| Filename | Original filename of a native file, | Text | Yes for Documents |
| RecordType | Displays the record type for each entry in the load file. | Text | Yes |
| ParentID | Displays the document identifier of the attachment record's parent (only for attachments). | Text | If it Exists |
| NumAttach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records. | Text | If it Exists |
| Attachmt | Populates parent records with document identifier of each attached record and is separated by semi-colons. | Text | If it Exists |
| Custodian | The owner of the record. | Text | Yes |
| From | Author of the e-mail message. | Text | Yes for email |
| To | Main recipient(s) of the e-mail message. | Text | Yes for email |
| CC | Recipient(s) of "Carbon Copies of the e-mail message. | Text | If it Exists |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | Text | If it Exists |
| EMail_Subject | Subject of the e-mail message. | Paragraph | Yes for email |
| DateSent | Sent date of an e-mail message.  Must be separate from TimeSent field. | MM/DD/YYYY | Yes for email |
| TimeSent | Time the e-mail message was sent. Must be separate from DateSent field. | Text | Yes for email |
| IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. | Text | If it Exists |
| ConversationIndex | This is a 44 character string of numbers and letters that is created in the initial email and which as 10 characters added for each reply or forward of an email. | Text | Yes for email |
| Conversation Family | E-mail thread identification.  Relational field for Conversion threads. | Text | Yes for email |
| EntryID | Unique identifier of e-mails in mail stores. | Text | If it Exists |
| Author | Author value pulled from metadata of the native file. | Text | If it Exists |
| Organization | Company extracted from metadata of the native file. | Text | If it Exists |
| Subject | Subject value extracted from metadata of the native file. | Paragraph | If it Exists |
| DateCreated | Creation date of the native file. | MM/DD/YYYY | If it Exists |
| DateLastMod | Date the native file was last modified. | MM/DD/YYYY | If it Exists |
| DateLastPrnt | Date the native file was last printed. | MM/DD/YYYY | If it Exists |
| MD5Hash | MD5 hash value. | Text | Yes |
| EDSource | Fully qualified original path to the source folder, files, and/or mail stores. | Text | Yes |



# CFTC Data Delivery Standards
### *Effective: June 14, 2018*

| Field | Description | Field Type | Required |
|-------|-------------|------------|----------|
| NativeFile | Hyperlink to the native file. | Text | Yes |
| Textpath | Extracted text path. | Paragraph | Yes |
| Imagkey | Page ID of the first page of a document (for image collections only). Should be the same as the Begno field. | Paragraph | Yes |
| + Any other fields considered relevant by the producing party. | | | |

### 4. Text

Text must be produced as separate text files, not as fields within the .DAT file. If text is included in the .DAT file as a field, the production will be rejected. Extracted text must be in a separate folder, one text file per document. The files must be named the same as the Begno field. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names).

### 5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the Begno field.
   b. The full path of the native file must be provided in the .DAT file for the NativeFile field.
   c. The number of native files per folder should not exceed 500 files.
   d. There should be no special characters (including commas in the folder names).

## III.   Productions of Adobe PDF Files

PDF files are not substitutions for native files, as metadata is lost when PDFing native files.  PDF productions that are produced as native productions will be rejected unless the files were originally created using Adobe (e.g., fillable electronic PDF forms) or prior agreement is reached with the designated CFTC attorney.  In those exceptions, PDF productions should adhere to the following guidelines:

1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document; **a PDF cannot contain multiple documents. PDF packages will be rejected.**
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.



# CFTC Data Delivery Standards
### *Effective:  June 14, 2018*

## IV.  Productions of Website Content

Website content must be produced in native format and viewable in common web browsers (e.g. Internet Explorer, Mozilla Firefox, and Google Chrome) without the use of any additional third party software. If the only existing state of a website is in source code form, the party must produce a fully compiled version of the website in addition to the website source code with documentation of the process used to render, compile, and/or restore the website to an easily viewable form.

## V.  Productions of Forensic Images of Computer Media

Forensic images must be produced in a common/standard format to include (E01, Ex01, L01, Lx01, AD1, Raw Bitstream, and S01). An inventory of any original computer media must be provided with the image files. All associated log files from any forensic acquisition must be produced with the image files. The log files must contain a hash value, at a minimum (MD5, SHA-1, or higher), for authentication purposes. A chain of custody document must be provided to ensure the integrity of any digital evidence.

## VI.  Productions of Forensically Acquired Mobile Device Data

Forensically acquired mobile device data must be provided in the original format of the software/hardware used to capture the data. All original logs and authentication reports must also be provided with the respective data.

## VII.  FTP (File Transfer Protocol) Submission

The preferred method for producing data is via FTP. The CFTC has an FTP site set up that will allow transfer of data up to 2 GB per transmission.

If you are interested in sending documents using FTP, email **eLaw-CPI@cftc.gov** and they will provide you with the Commission's FTP credentials upon request.  When sending documents via FTP, you **MUST** include the CFTC point of contact and a cover letter.



**U.S. COMMODITY FUTURES TRADING COMMISSION**
**WASHINGTON, D.C. 20581**

Statement to Persons Providing Information about Themselves to
the Commodity Futures Trading Commission

This document sets forth your legal rights and responsibilities as a person requested to supply information about yourself voluntarily, as a person with recordkeeping obligations under the Commodity Exchange Act or CFTC regulations, or as a person directed to provide sworn testimony or produce documents pursuant to a subpoena of the Commodity Futures Trading Commission ("Commission" or "CFTC").  When applicable, this statement also provides important information about the deposition process for persons providing testimony.  Unless stated otherwise, the information below applies whether you are providing information voluntarily, pursuant to the recordkeeping obligations of a registrant, or pursuant to subpoena.

<u>FALSE STATEMENTS AND DOCUMENTS</u>

Any person who knowingly and willfully makes false or fraudulent statements, whether under oath or otherwise, or falsifies, conceals or covers up a material fact, or submits any false writing or document, knowing it to contain false, fictitious or fraudulent information, is subject to the criminal penalties set forth in 18 U.S.C. § 1001, which include imprisonment of not more than five years, imposition of a substantial fine under the Federal Sentencing Guidelines, or both.

It shall also be unlawful for any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this Act, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading, as set forth in Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2).

<u>PRIVACY ACT</u>

To restrict unauthorized dissemination of personal information, the Privacy Act of 1974, 5 U.S.C. § 552a, limits an agency's ability to disclose such information.[1]  Under the Privacy Act, the Commission may disclose protected information as follows:  when the individual to whom the record pertains consents in writing; when officers and employees of the Commission need the record to perform their duties; when required by the terms of the Freedom of Information Act, 5 U.S.C. § 552; or when disclosure is for a "routine use" (i.e., one compatible with the purpose for which the information was collected).

---

[1]  Individuals should refer to the full text of the Privacy Act, 5 U.S.C. § 552a, to the Commission's Regulations, 17 C.F.R. § 146, and the CFTC's compilation of System of Record Notices, 76 Fed. Reg. 5974 (Feb. 2, 2011), for a complete list of authorized disclosures and coverage of the Act.  Only those disclosures arising most frequently are mentioned in this document.

Revised August 15, 2013



The Privacy Act also requires that, in certain situations, individuals requested to provide information about themselves receive notice of the following:

1.     <u>AUTHORITY FOR SOLICITATION OF INFORMATION</u>.

    a. Recordkeeping for Registered Persons (other than Registered Swap Dealers and Major Swaps Participants).  Sections 4f, 4g and 4n of the Commodity Exchange Act, 7 U.S.C. §§ 6f, 6g, 6n, and Commission Regulations 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34, 1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7 and 33.7, 17 C.F.R. §§ 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34,1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7, 33.7, require Registered Persons other than Registered Swap Dealers and Major Swaps Participants to keep records and reports of transactions and positions in commodities for future delivery on any board of trade in the United States or elsewhere.  Registered Persons must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection by any representative of the Commission or the Department of Justice.

    b. Recordkeeping for Members of a Registered Entity.  Commission Regulations 1.31, 1.35 and 1.37, 17 C.F.R. §§ 1.31, 1.35, 1.37, require Members of a Registered Entity to keep records and reports of transactions and positions in commodities for future delivery and options on any board of trade in the United States or elsewhere, as well as cash commodities.  Members of a Registered Entity must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection upon request by any representative of the Commission or the Department of Justice.  Commission Rule 1.40, 17 C.F.R. § 1.40, requires each Member of a Registered Entity to furnish to the Commission certain reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity.

    c. Recordkeeping for Large Traders.  Section 4i of the Commodity Exchange Act, 7 U.S.C. § 6i, and Commission Regulations 1.31 and 18.05, 17 C.F.R. §§ 1.31, 18.05, require Large Traders to keep books and records showing, among other things, all details concerning all positions and transactions in the commodity, and in its products and by-products, whether executed through a contract for future delivery, an option contract or a cash contract, and whether such contract is executed through a board of trade, an exempt commercial market, an exempt board of trade, a foreign board of trade or an over-the-counter transaction.  All such books and records, and pertinent information concerning the underlying positions, transactions or activities, must be made available for inspection in a form acceptable to the Commission upon request by any representative of the Commission.

    d. Recordkeeping for Registered Swap Dealers and Major Swaps Participants.  Sections 4r and 4s of the Commodity Exchange Act, 7 U.S.C. §§ 6r, 6s, and Commission Regulations 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, 46.2, require Swap Dealers ("SDs") and Major Swaps Participants ("MSPs") to keep records of all activities relating to their business with respect to swaps.  The records must be readily accessible throughout the life of the swap and for two years following its termination, and retrievable by the SD or MSP within three business days during the remainder of the retention period.  Each SD and MSP shall make available for

2



disclosure to and inspection by the Commission and its prudential regulator, as applicable, all information required by, or related to, the Commodity Exchange Act and Commission Regulations, including: (i) the terms and condition of its swaps; its swaps trading operations, mechanisms, and practices; financial integrity and risk management protections relating to swaps; and (iv) any other information relevant to its trading in swaps.  Such information shall be made available promptly, upon request, to Commission staff and the staff of the applicable prudential regulator, at such frequency and in such manner as is set forth in the Commodity Exchange Act, Commission regulations, or the regulations of the applicable prudential regulator.

e.  Recordkeeping by Swaps Participants who are not Registered.  Section 4r of the Commodity Exchange Act, 7 U.S.C. § 6r, and Commission Regulations 1.31, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 45.2, 46.2, require non-SD/MSP counterparties to keep records with respect to each swap in which they are a counterparty.  Required records must be kept by all swap counterparties throughout the existence of a swap and for five years following termination of the swap.  In the case of a non-SD/MSP counterparty, the records must be retrievable by the counterparty within five business days throughout the retention period.

f.  Investigations.  Sections 6(c) and 8(a) of the Commodity Exchange Act, 7 U.S.C. §§ 9, 12(a), and Commission Rule 11.2, 17 C.F.R. § 11.2, authorize the Commission to conduct investigations.  In the course of any investigation or proceeding, the Commission or an officer designated by the Commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require production of documents, and secure voluntary statements or submissions.

g.  Whistleblowers.  Section 23 of the Commodity Exchange Act, 7 U.S.C. § 26, and Commission Rule 165, 17 C.F.R. § 165, authorize the Commission to obtain information from persons seeking to participate in the Commission's whistleblower program. Commission staff may request information from prospective whistleblowers to determine whether a tip or complaint relates to a violation of the Commodity Exchange Act, to further an investigation into any such violation, and/or to determine whether the person submitting the information is eligible to participate in the program.  The Commission will not disclose information that could reasonably be expected to reveal the identity of a whistleblower, except under the circumstances described in Commission Rule 165.4, 17 C.F.R. § 165.4, and Section 23(h)(2) of the Commodity Exchange Act, 7 U.S.C. § 26(h)(2).

2.  <u>PURPOSE OF SOLICITATION OF INFORMATION</u>.  The Commission's principal purpose in soliciting information from you is to determine whether any person has violated, is violating, or is about to violate the Commodity Exchange Act or the rules and regulations thereunder. In certain circumstances, the Commission may be obtaining information at the behest of a foreign futures authority under Section 12(f) of the Commodity Exchange Act, 7 U.S.C. § 16(f).

3.  <u>EFFECT OF NOT SUPPLYING INFORMATION</u>.
   a.  Persons Directed to Provide Testimony or Produce Documents Pursuant to Subpoena. Disclosure of information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.  If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so.  If the Commission obtains such an order and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt.

3



b.  Persons Requested to Provide Information Voluntarily.  There are no direct effects or sanctions for failing to provide any or all of the requested information.  If you do provide information, however, you should note the sanctions for false statements and documents described above.

c.  Registered Persons.  Disclosure of requested books or records is mandatory pursuant to the provisions listed in paragraph 1.a. above.  Failure to submit or make available for inspection the requested information constitutes a violation of the Commodity Exchange Act and Commission Regulations and may result in any or all of the following under Sections 6(c), 6(d) or 6c of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13a-1, 15:

   1)  Institution of an action by the Commission to enjoin such a violation or enforce compliance;

   2)  Upon proper showing, granting of a temporary or permanent injunction or restraining order without bond;

   3)  Upon application by the Commission, issuance of writs of mandamus or orders offering like relief commanding compliance with the Commodity Exchange Act;

   4)  Imposition of a civil penalty of not more than the greater of $140,000 or such higher inflation adjusted amount as provided by Regulation 143.8, 17 C.F.R. §143.8 or triple the monetary gain to the person for each violation;

   5)  At the request of Commission, institution of an action by the Attorney General;

   6)  Prohibition of trading on, or subject to the rules of, a registered entity and require all registered entities to refuse the person all privileges;

   7)  Suspension or revocation of registration with the Commission;

   8)  Required payment of restitution to customers for damages proximately caused by violations;

   9)  Entry of a cease and desist order;

   10)  Imposition of a restraining order prohibiting you from destroying, altering or disposing of, or refusing to allow authorized representatives of the Commission to inspect, when and as requested, such books, records or other documents; and

   11)  Imposition of a restraining order prohibiting you from withdrawing, transferring, removing, dissipating or disposing of any funds, assets or other property.

d.  Whistleblowers.  Failure to provide information requested by Commission staff in relation to a whistleblower submission may affect your ability to receive a whistleblower award, or the potential amount of an award.

4.  ROUTINE USES OF INFORMATION.  The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate.  Whether or not the Commission makes its files available to

Revised August 15, 2013



other governmental agencies is, in general, a confidential matter between the Commission and such other government agencies.  Information which you provide may be used in the routine operation of the Commission, which includes law enforcement, review of legislative and regulatory proposals, regulation of the commodity futures and swaps markets, and review of reports and documents filed with the Commission.

Specific routine uses include the following:[2]

a. Information may be used by the Commission in any administrative proceeding before the Commission, in any injunctive action authorized under the Commodity Exchange Act, or in any other action or proceeding in which the Commission or its staff participates as a party or the Commission participates as amicus curiae.

b. Information may be disclosed to the Department of Justice, the Securities and Exchange Commission, the United States Postal Service, the Internal Revenue Service, the Department of Agriculture, the Office of Personnel Management, and to other Federal, state, local, territorial or tribal law enforcement or regulatory agencies for use in meeting their statutory and regulatory requirements.

c. Information may be given to any "registered entity," as defined in Section 1a of the Commodity Exchange Act, 7 U.S.C. § 1a, if the Commission has reason to believe that such information will assist the registered entity in carrying out its responsibilities under the Act.  Information may also be given to any registered futures association registered under Section 17 of the Commodity Exchange Act, 7 U.S.C. § 21, (e.g., the National Futures Association) to assist it in carrying out its self-regulatory responsibilities under the Act, and to any national securities exchange or national securities association registered with the Securities and Exchange Commission to assist those organizations in carrying out their self-regulatory responsibilities under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

d. At the discretion of the Commission staff, information may be given or shown to anyone during the course of a Commission investigation if the staff has reason to believe that the person to whom it is disclosed may have further information about the matters discussed therein, and those matters appear relevant to the subject of the investigation.

e. Information may be included in a public report issued by the Commission following an investigation, to the extent that this is authorized under section 8 of the Commodity Exchange Act, 7 U.S.C. § 12.  Section 8 authorizes publication of such reports but contains restrictions on the publication of certain types of sensitive business information developed during an investigation.  In certain contexts, some of this information might be considered personal in nature.

f. Information may be disclosed to a Federal agency in response to its request in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract or the issuance of a license, or a grant or other benefit by the requesting agency, to the extent that the information may be relevant to the requesting agency's decision on the matter.

---

[2]  See CFTC compilation of System of Record Notices, including routine uses, at 76 Fed. Reg. 5974 (Feb. 2, 2011).

Revised August 15, 2013



g. Information may be disclosed to a prospective employer in response to its request in connection with the hiring or retention of an employee, to the extent that the information is believed to be relevant to the prospective employer's decision in the matter.

h. Information may be disclosed to any person, pursuant to Section 12(a) of the Commodity Exchange Act, 7 U.S.C. § 16(a), when disclosure will further the policies of that Act or of other provisions of law.  Section 12(a) authorizes the Commission to cooperate with various other government authorities or with "any person."

i. Where information, either alone or in conjunction with other information indicates a violation or potential violation of law – criminal, civil or regulatory in nature – the relevant information may be disclosed to the appropriate Federal, state, local, territorial, tribal or foreign law enforcement authority or other appropriate entity charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

j. Information may be disclosed to the General Services Administration, or the National Archives and Records Administration, for the purpose of records management inspections conducted under the authority of 44 U.S.C. §§ 2904 and 2906.

k. Information may be disclosed to foreign law enforcement, investigatory or administrative authorities in order to comply with requirements set forth in international arrangements, such as memoranda of understanding.

l. Information may be disclosed to contractors, grantees, volunteers, experts, students and others performing or working on a contract, service, grant, cooperative agreement or job for the Federal government when necessary to accomplish an agency function.

m. Information may be disclosed to the Merit Systems Protection Board, including the Office of Special Counsel, for the purpose of litigation, including administrative proceedings, appeals, special studies of the civil service and other merit systems.

n. Information may be disclosed to the Department of Justice or in a proceeding before a court, adjudicative body or other administrative body which the agency is authorized to appear, when:

    i. the agency, or any component thereof; or

    ii. any employee of the agency in his or her official capacity; or

    iii. any employee of the agency in his or her official capacity where the Department of Justice or the agency has agreed to represent the employee; or

    iv. the United States, when the agency determines that litigation is likely to affect the agency or any of its components;

is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation; provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

Revised August 15, 2013



o.  Information may be disclosed to a Member of Congress or staff acting upon the Member's behalf when the Member or staff requests the information on behalf of, or at the request of, the individual who is the subject of the record.

p.  Information related to any traders or the amount or quantity of any commodity purchased or sold by such traders may be disclosed to any committee of either House of Congress upon its request, acting within the scope of its jurisdiction, pursuant to the Commodity Exchange Act, including Section 8(e) of such Act, 7 U.S.C. § 12(e), and the rules and regulations promulgated thereunder.

q.  Information may be disclosed to another Federal agency, to a court or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

Revised August 15, 2013



    r.  Information may be disclosed to appropriate agencies, entities and individuals when:

        i.  the Commission suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised;

        ii.  the Commission has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the Commission or another agency or entity) that rely upon the compromised information; and

        iii.  the disclosure made to such agencies, entities, and individuals is reasonably necessary to assist in connection with the Commission's efforts to respond to the suspected or confirmed compromise and prevent, minimize or remedy such harm.

FREEDOM OF INFORMATION ACT

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Commission's rules and regulations pursuant thereto, 17 C.F.R. § 145, generally provide for disclosure of information to the public, unless information falls within a specified exemption.  Commission Rule 145.9, 17 C.F.R. § 145.9, establishes the procedure by which you may request that certain sensitive information not be disclosed pursuant to a FOIA request.

INFORMAL PROCEDURE RELATING TO THE
RECOMMENDATION OF ENFORCEMENT PROCEEDINGS

As a result of facts gathered in an investigation, the Division of Enforcement may decide to propose an enforcement action against one or more individuals.  Under the Informal Procedure Relating to the Recommendation of Enforcement Proceedings,[3] the Division of Enforcement, in its discretion, may inform persons to be named in such actions of the nature of the allegations pertaining to them. The Division may also, in its discretion, advise such persons that they may submit a written statement before the consideration by the Commission of any staff recommendation for the commencement of the proceeding.  Unless otherwise provided, such written statements must be submitted within 14 days after persons are informed by the Division of Enforcement of the nature of the allegations pertaining to them.

SMALL BUSINESS REGULATORY AND ENFORCEMENT FAIRNESS ACT

Your comments are important.  If you wish to comment on the enforcement or regulatory actions of the Commodity Futures Trading Commission, please call the Small Business Liaison in the Office of General Counsel at (202) 418-5120.  You may also wish to contact the Small Business and Agriculture Regulatory Enforcement Ombudsman, or one of the 10 Regional Fairness Boards, which were established by the Small Business Regulatory and Enforcement Fairness Act.  The Ombudsman and Boards receive comments from small businesses about Federal agency enforcement actions.  The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business.  If you wish to contact the Ombudsman to comment on the enforcement actions of the CFTC, please call1-888-REG-FAIR (1-888-734-3247).

---

[3]  The Informal Procedure has been adopted as Appendix A to Part 11 of the Commission's Regulations, 17 C.F.R. § 11, Appendix A.  Appendix A more fully sets forth the substantive and procedural provisions of the Informal Procedure.

8

**EXHIBIT M**

TO THE MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

**Hunt, Brian**

| | |
|---|---|
| **From:** | Hunt, Brian |
| **Sent:** | Tuesday, February 23, 2021 1:33 PM |
| **To:** | 'Slovick, David' |
| **Cc:** | Solinsky, Michael W.; Loconte, Michael |
| **Subject:** | RE: Robert Higgins |

David,

The Commission has had subpoenas to First State Depository and Argent Asset Group outstanding since November 19, 2019 and January 14, 2020, respectively.  As you have acknowledged, we have been exceedingly patient with your clients, and, but it has now been well over a year since the first set of subpoenas was issued (and almost seven months since the second set of subpoenas issued).  We appreciate your efforts, but a simple assurance that you have asked your client to get documents to you ASAP is not going to cut it.  We will give your clients until March 5 to complete their productions in response to all outstanding subpoenas, including but not limited to the priority items we have discussed.  After that date we will recommend that a subpoena enforcement action be instituted against your clients, and begin drafting papers.

Thank you,
Brian



**Brian A. Hunt**
Trial Attorney, Division of Enforcement
**Commodity Futures Trading Commission**
202-418-5095
bhunt@cftc.gov

---

**From:** Slovick, David <DSlovick@btlaw.com>
**Sent:** Monday, February 22, 2021 3:44 PM
**To:** Hunt, Brian <BHunt@CFTC.gov>
**Cc:** Solinsky, Michael W. <msolinsky@CFTC.gov>; Loconte, Michael <MLoconte@CFTC.gov>
**Subject:** [EXTERNAL] RE: Robert Higgins

Brian:

I spoke with the client today and emphasized the need to get you these documents ASAP. I will stay on him. Thank you for your patience (again).

Best,

David

**David Slovick** | Partner
Barnes & Thornburg LLP
445 Park Avenue, Suite 700
New York, NY 10022

[The Remainder of This Email Chain Has Been Omitted]